LOCAL 98 OF THE UNITED ASSOCIATION OF JOURNEYMEN
AND APPRENTICES OF THE PLUMBING AND PIPEFITTING
INDUSTRY OF THE UNITED STATES AND CANADA, AFL-CIO v
FLAMEGAS DETROIT CORPORATION

1. ESTOPPEL—PARTIES—IDENTITY OF ISSUES.

Substantial identity of the parties and identical issues in the two
actions are required for collateral estoppel purposes in order to
bar a plaintiff from maintaining the subsequent action.

2. ESTOPPEL—IDENTITY OF ISSUES—MATERIAL CHANGES.

Existence of a collective bargaining agreement between a prime
contractor and a labor union is a material change of fact which
prevents the application of collateral estoppel where such an
agreement was not in existence at the time of an earlier action
between the union and a subcontractor.

3. LABOR RELATIONS—NATIONAL LABOR RELATIONS ACT—COURTS—JU-
RISDICTION.

State jurisdiction must yield when an activity complained of is
arguably subject to § 7 or § 8 of the National Labor Relations
Act and the National Labor Relations Board has exclusive
jurisdiction to decide such dispute; therefore a plaintiff's claim
of tortious interference with an advantageous business relation-
ship is only within the jurisdiction of a Michigan court if the
Court of Appeals is certain that it is outside the scope of § 7
and § 8 (29 USC §§ 157, 158).

4. LABOR RELATIONS—NATIONAL LABOR RELATIONS ACT—EMPLOYERS—
EMPLOYEES.

A person must be in an employer-employee relationship with the
employees against whom he has allegedly committed an unfair
labor practice to be an employer within the meaning of § 8 of
the National Labor Relations Act (29 USC §§ 152, 158).

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 28 Am Jur 2d, Estoppel and Waiver §§ 20, 21.
[3, 6] 48 Am Jur 2d, Labor and Labor Relations §§ 430, 1157–1161,
1338, 1339.
[4, 5] 48 Am Jur 2d, Labor and Labor Relations §§ 539–758.
[7] 48 Am Jur 2d, Labor and Labor Relations §§ 1205, 1298.

5. LABOR RELATIONS—EMPLOYERS—EMPLOYEES.

There was no employer-employee relationship between a subcontractor and the members of a labor union with whom a prime contractor had a contract where the subcontractor did not have complete control over hire, discharge, discipline and promotion, rates of pay, supervision or determination of policy matters in regard to the union members.

6. LABOR RELATIONS—NATIONAL LABOR RELATIONS ACT—COURTS—JURISDICTION—EMPLOYERS.

The state courts have jurisdiction of a dispute between a labor union and a subcontractor where the subcontractor does not qualify as an "employer" within the meaning of § 8 of the National Labor Relations Act and where the subcontractor's activity is not "arguably subject to § 7 or § 8 of the Act" (29 USC §§ 157, 158).

CONCURRENCE BY O'HARA, J.

7. LABOR RELATIONS—NATIONAL LABOR RELATIONS ACT—CONTRACTS—COURTS—JURISDICTION.

*A claim that a third party tortiously interfered with a contract between a labor union and another contractor to do something separate and apart from that which the National Labor Relations Board found was the exclusive right of the third party to do is a litigable question and the proper subject matter of proofs in the Michigan circuit court; jurisdiction over the claim has not been preempted by the National Labor Relations Act.*

Appeal from Wayne, James Montante, J. Submitted Division 1 January 11, 1974, at Detroit. (Docket No. 15455.) Decided March 27, 1974. Leave to appeal granted, 392 Mich —.

Complaint by Local 98 of the United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada, AFL-CIO against Flamagas Detroit Corporation, Flamegas Eastside Detroit, Incorporated, Flamegas Industrial Corporation and Flamegas Utica Corporation for alleged tortious interference with an advantageous business relationship. Defendants' motion for accelerated judgment granted. Plaintiff appeals. Reversed and remanded.

*Boaz Siegel (Zwerdling, Maurer, Diggs & Papp,* by *George M. Maurer, Jr.,* of counsel) and *Kratze, Greenbaum & Littman* (by *Frederick B. Gold)* for plaintiff.

*Fitzgerald, Peters, English & Damm* (by *John E. English)* and *Fildew, Gilbride, Miller & Todd* (by *John H. Fildew),* for defendants.

Before: McGREGOR, P. J., and J. H. GILLIS and O'HARA,\* JJ.

J. H. GILLIS, J. Plaintiff union entered into a collective bargaining agreement with the Metropolitan Detroit Plumbing and Mechanical Contractors Association, Inc. (hereinafter referred to as Association), effective June 2, 1970 through May 31, 1972. Article 19 of this contract provides in part:

"Temporary Heat
"(a) It is recognized that Stand-by Maintenance of gas-fired unit heaters, gas-fired warm air furnace and gas-fired space heating equipment shall be under the jurisdiction of Plumbers Local 98.
"(b) It is optional with the owner or contractor to provide temporary heat, and to decide the number of hours it shall be in operation, so long as all phases of maintenance are recognized as work of the United Association, a member of which shall be in attendance during operational periods until the general tests are completed and the mechanical installation is accepted by the owner."

Walbridge-Aldinger Co. was the prime contractor for the construction of a General Motors plant in Oakland County. Lorne Company (hereinafter referred to as Lorne), a member of the Association,

---

\* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

was the plumbing and mechanical contractor for this project. Defendants are the major suppliers of temporary gas-fired heating equipment to the construction industry in the metropolitan area. Lorne contracted with defendant Flamegas Utica Corporation to rent heating equipment for the General Motors site. Defendant, contending its employees had the right to install, hook up and maintain this equipment, threatened not to honor its contract with Lorne if Lorne honored its agreement with plaintiff, specifically article 19. Because of these threats, Lorne assigned its contract with defendant to Walbridge-Aldinger.[1] Plaintiff alleges similar facts against Flamegas Detroit with respect to its dealings with John F. McCarthy Co. (hereinafter referred to as McCarthy), an Association member. Plaintiff brought this action in May 1972, charging defendants with tortious interference with an advantageous business relationship. Defendants filed a motion for accelerated judgment, GCR 1963, 116, asserting (1) the court lacked subject matter jurisdiction because this matter is within the sole jurisdiction of the National Labor Relations Board (hereinafter referred to as NLRB), and (2) this action is barred because the issues raised were decided adversely to plaintiff in two prior adjudications before the NLRB in 1970. The lower court, finding federal preemption by the NLRB, granted defendants' motion. Plaintiffs appeal.

In order to understand the posture of the present controversy, it is necessary to detail the facts of the prior dispute between the parties which resulted in the two NLRB decisions in 1970. In December 1969, Darin and Armstrong Co. (hereinafter referred to as Darin), general contractor for a

---

[1] Walbridge-Aldinger is not a member of the Association, and, consequently, was not bound by the collective bargaining agreement.

Chrysler Corporation project, rented gas-fired heaters from Flamegas Detroit. In January, 1970, Local 98 advised Darin that it was claiming jurisdiction of all installation, hookup and maintenance work on the heaters on behalf of the plumbers. This work was then being done by Flamegas employees, who were not members of Local 98. The union claimed that the work had traditionally been done by plumbers. *But there was no collective bargaining agreement between the union and Darin.* Darin refused to accede to Local 98's demands, and the Local picketed the jobsite.

Only one of the two NLRB cases directly concerns us here.[2] That was a proceeding pursuant to § 10(k)[3] of the National Labor Relations Act (hereinafter referred to as the Act), following a charge filed by Darin alleging Local 98 had violated § 8(b)(4)(D)[4] of the Act.[5] All parties were afforded full opportunity to be heard and to examine and cross-examine witnesses. Flamegas Detroit and

---

[2] In the other case, *Darin & Armstrong Co,* 185 NLRB 582 (1970), the union's picketing in support of its jurisdictional claim was held unlawful.

[3] 29 USC 160(k).

[4] 29 USC 158(b)(4)(D).

[5] "Section 8(b)(4)(D) prohibits a labor organization from engaging in or inducing strike action for the purpose of forcing any employer to assign particular work to 'employees in a particular labor organization or in a particular trade, craft, or class rather than to employees in another labor organization or in another trade, craft, or class, unless such employer is failing to conform to an order or certification of the Board determining the bargaining representative for employees performing such work.'

"An unfair labor practice charge under this section, however, must be handled differently from a charge alleging any other type of unfair labor practice. Section 10(k) requires that parties to a jurisdictional dispute be given 10 days, after notice of the filing of the charges with the Board, to adjust their dispute. If at the end of that time they are unable to 'submit to the Board satisfactory evidence that they have adjusted, or agreed upon methods for the voluntary adjustment of the dispute,' the Board is empowered to hear the dispute and make an affirmative assignment of the disputed work." Smith, Merrifield and St. Antoine, Labor Relations Law (4th Ed.), p 544.

Flamegas Industrial filed a memorandum of authorities and argument. In awarding the disputed work to Flamegas employees, the NLRB said:

"[W]e shall determine the jurisdictional dispute by awarding the work in dispute to employees of Flamegas Detroit and Flamegas Industrial. Since there is undisputed testimony that Plumbers Local 98 threatened to search out any job where Flamegas was located and that 'there would be trouble,' we find that there is a strong probability that similar disputes involving Plumbers Local 98 may occur in the future. We shall therefore apply our award in this case not only to the Chrysler project jobsite at which the dispute arose, but to all similar work *being performed or to be performed* by Flamegas within the geographical jurisdiction of the Plumbers Local 98." (Emphasis supplied.)[6]

## I

Is plaintiff collaterally estopped because of this NLRB decision from maintaining the present action? Collateral estoppel "means simply that when an issue of * * * fact has once been determined by a valid and final judgment, *that issue* cannot again be litigated between *the same parties* in any future lawsuit". (Emphasis supplied.) *Ashe v Swenson,* 397 US 436, 443; 90 S Ct 1189, 1194; 25 L Ed 2d 469, 475 (1970); see *Knibbe v City of Warren,* 2 Mich App 241; 139 NW2d 344 (1966). Thus, application of this doctrine requires (1) identity of parties and (2) identity of issues.

For collateral estoppel purposes the parties in the NLRB case and the present action are identical. Substantial identity, not precise identity, is all that is required. *Sunshine Anthracite Coal Co v Atkins,* 310 US 381; 60 S Ct 907; 84 L Ed 1263 (1940). While Darin, a party in the previous case,

[6] *Darin & Armstrong Co,* 185 NLRB 854, 856 (1970).

is not a party here, "it is no objection that the former action included parties not joined in the present action, or vice versa, so long as the judgment was rendered on the merits * * * ". *Dreyfus v First National Bank of Chicago,* 424 F2d 1171, 1175, (CA 7, 1970); see *Jordon v Stuart Creamery, Inc,* 258 Iowa 1; 137 NW2d 259 (1965).

The estoppel doctrine requires the issues in the two actions to be identical, not merely similar. *Sonken-Galamba Corporation v Atchison T & S F Ry Co,* 28 F Supp 456 (WD Mo, 1939). Defendants argue the issue here is the same as that before the NLRB in 1970. They say the issue before the NLRB was: Who is entitled to perform the installation, hookup, and maintenance of the gas heaters—Flamegas employees or the plumbers? Defendants contend this is precisely the issue before us in this case. We disagree.

There was no collective bargaining agreement between Local 98 and Darin as there is here between the Local and Lorne and McCarthy. Thus, in the 1970 action there was not, nor could there have been, any question of tortious interference with contract by Flamegas. This contractual relationship is a material change of fact which prevents application of collateral estoppel in the present case.

" 'The estoppel of a judgment extends only to the facts and conditions as they were at the time the judgment was rendered, and to the legal rights and relations of the parties as fixed by the facts so determined; and when new facts or conditions intervene before a second suit, furnishing a new basis for the claims and defenses of the parties respectively, the issues are no longer the same, and hence the former judgment cannot be pleaded in bar to the subsequent action.' " *Wright v Kinnard,* 147 Ind App 484, 489; 262 NE2d 196, 200 (1970); see *Meister v Dillon,* 324 Mich

389; 37 NW2d 146 (1949); *Cloverlanes Bowl, Inc v Gordon,* 46 Mich App 518; 208 NW2d 598 (1973).

The absence of a contract between Darin and the union was an important fact considered by the NLRB. They noted in their 1970 decision:

"Although Darin and Armstrong is also a member of the Association, there is no evidence that it employs any plumbers or is bound by the Association contract with Plumbers Local 98." *Darin & Armstrong Co,* 185 NLRB 854, 855 (1970).

## II

Does the subject matter of this action come within the exclusive jurisdiction of the NLRB, thereby ousting our courts of jurisdiction? The United States Supreme Court succinctly set forth the standard governing NLRB preemption in *San Diego Building Trades Council v Garmon,* 359 US 236; 79 S Ct 773; 3 L Ed 2d 775 (1959).

"When it is clear or may fairly be assumed that the activities which a State purports to regulate are protected by § 7 of the National Labor Relations Act, or constitute an unfair labor practice under § 8, due regard for the federal enactment requires that state jurisdiction must yield. To leave the States free to regulate conduct so plainly within the central aim of federal regulation involves too great a danger of conflict between power asserted by Congress and requirements imposed by state law. Nor has it mattered whether the States have acted through laws of broad general application rather than laws specifically directed towards the governance of industrial relations. Regardless of the mode adopted, to allow the States to control conduct which is the subject of national regulation would create potential frustration of national purposes. * * * *When an activity is arguably subject to § 7 or § 8 of the Act, the States as well as the federal courts must defer to*

*the exclusive competence of the National Labor Relations Board* if the danger of state interference with national policy is to be averted." *Garmon,* 359 US 244, 245; 79 S Ct 779, 780; 3 L Ed 2d 782, 783. (Emphasis supplied.)

An unbroken line of cases have followed *Garmon.*[7]

The question we must answer, therefore, is this: Do defendants' actions alleged in plaintiff's complaint constitute an activity arguably subject to § 7[8] or § 8[9] of the Act? "Arguably" is the key word here. It has been interpreted to mean "fairly debatable." *Buckman v United Mine Workers of America,* 80 Wyo 216; 342 P2d 236 (1959). *Garmon* said:

"At times it has not been clear whether the particular activity regulated by the States was governed by § 7 or § 8 or was, perhaps, outside both these sections. But courts are not primary tribunals to adjudicate such issues. It is essential to the administration of the Act

[7] *Motor Coach Employees v Lockridge,* 403 US 274; 91 S Ct 1909; 29 L Ed 2d 473 (1971); *International Brotherhood of Boilermakers v Hardeman,* 401 US 233; 91 S Ct 609; 28 L Ed 2d 10 (1971); *International Longshoremen's Assoc v Ariadne Shipping Co,* 397 US 195; 90 S Ct 872; 25 L Ed 2d 218 (1970); *Nash v Florida Industrial Commission,* 389 US 235; 88 S Ct 362; 19 L Ed 2d 438 (1967); *Local 20 v Morton,* 377 US 252; 84 S Ct 1253; 12 L Ed 2d 280 (1964); *Liner v Jafco, Inc,* 375 US 301; 84 S Ct 391; 11 L Ed 2d 347 (1964); *Motor Coach Employees v Missouri,* 374 US 74; 83 S Ct 1657; 10 L Ed 2d 763 (1963); *Local 100 v Borden,* 373 US 690; 83 S Ct 1423; 10 L Ed 2d 638 (1963); *Local 438 v Curry,* 371 US 542; 83 S Ct 531; 9 L Ed 2d 514 (1963).

[8] 29 USC § 157: "Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in section 158(a)(3) of this title."

[9] 29 USC § 158. This section sets forth what actions shall constitute unfair labor practices; § 8(a)(1)–(5) lists unfair labor practices of employers and § 8(b)(1)–(7) lists those of labor organizations.

that these determinations be left in the first instance to the National Labor Relations Board." 359 US 244, 245; 79 S Ct 779; 3 L Ed 2d 783.

Thus, plaintiff's claim is within our jurisdiction only if we are certain that it is outside the scope of § 7 and § 8.

Section 7 has no "teeth" of its own. It's sanctions are in § 8. Section 8(a)(1) provides:

"It shall be an unfair labor practice for an employer to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title * * * ."

Section 8(b)(1) places a similar restriction on labor unions with respect to § 7 rights. It seems that our question then becomes simply: Is defendant's activity "arguably" an unfair labor practice proscribed by § 8?

Only two classes of "persons"[10] can commit unfair labor practices—employers and labor organizations. Defendants are not labor organizations. Therefore, unless defendants are properly classified employers, it would be impossible for their alleged activity to be proscribed by § 8.

To be an employer within the meaning of § 8, a "person" must be in an employer-employee relationship with the employees against whom he has allegedly committed an unfair labor practice. That this is so was made clear by the Third Circuit in *National Labor Relations Board v Condenser Corp,* 128 F2d 67 (CA 3, 1942). Condenser was the wholly owned subsidiary of its parent, Cornell Corporation. In ruling that Cornell was an "employer" to

---

[10] We use the term "person" as defined in § 2 of the Act (29 USC § 152): "The term 'person' includes one or more individuals, labor organizations, partnerships, associations, corporations, legal representatives, trustees, trustees in bankruptcy, or receivers."

Condenser's employees for the purposes of the Act, the Court said:

"This is in no sense a penalty against the parties for an arrangement which is deemed by them to be in the interests of efficiency. It simply rests on the premise that where in fact the production and distribution of merchandise is one enterprise, that enterprise, as a whole, is responsible for compliance with the Labor Relations Act regardless of the corporate arrangements of the parties among themselves. What is important for our purpose is the degree of control over the labor relations in issue exercised by the company charged as a respondent. *Press Co, Inc v National Labor Relations Board,* 73 App DC 103; 118 F2d 937 (1940). Regardless of what Cornell says concerning its connection with Condenser's employees it appears that 'together, respondents act as employers of those employees * * * and together actively deal with labor relations of those employees'. *National Labor Relations Board v Pennsylvania Greyhound Lines, Inc,* 303 US 261, 263; 58 S Ct 571, 572; 82 L Ed 831; 115 ALR 307 (1938). Evidence of this is abundant. Some is manifest from our discussion, later in this opinion, of various aspects of union activity and employer interference. It will suffice at this time to point out that Cornell's officers were very active in dominating the original local union, Independent, and again, in bringing negotiations with that group's successor, Brotherhood, to a culmination. It is noteworthy, too, that the reinstatement of some of the men first discharged was arranged with Cornell's president, Mr. Blake. This and similar evidence is controlling in our disposition of the question of Cornell's status as an employer. As has been said, ' * * * the problem is not to be approached from the standpoint of vicarious liability'. *Consolidated Edison Co of New York, Inc v National Labor Relations Board,* 95 F2d 390, 394 (1938) modified on another point, and affirmed, 305 US 197; 59 S Ct 206; 83 L Ed 126 (1938). It is rather a matter of determining which of two, or whether both, respondents control, in the capacity of employer, the labor relations of a given group of workers." 128 F2d 67, 71, 72 (CA 3,

1942). See *National Labor Relations Board v Lund,* 103 F2d 815 (CA 8, 1939).

Decisive factors in establishing an employer-employee relationship are complete control over hire, discharge, discipline and promotion of employees, rates of pay, supervision and determination of policy matters. *Roane-Anderson Co,* 95 NLRB 1501 (1951).

We find there was no employer-employee relationship between defendants and plaintiff. Defendants are not "employers" within the meaning of § 8. Defendants alleged activity is not "arguably subject to § 7 or § 8 of the Act." Therefore, there is no preemption here; our courts have jurisdiction over the subject matter of this action.

Nothing we say here contravenes the United States Supreme Court's ruling in the post-*Garmon* case, *Motor Coach Employees v Lockridge,* 403 US 274; 91 S Ct 1909; 29 L Ed 2d 473 (1971). There, plaintiff Lockridge, a member of defendant union filed suit against defendant in the Idaho courts, charging breach of contract. The Idaho Supreme Court concluded the state's courts had jurisdiction. It reasoned that *Garmon's* preemption principles apply only where the state law invoked is designed specifically to regulate labor relations—they have no force where the state applies its general common law of contracts to resolve disputes between a union and its members. In rejecting this reasoning, Mr. Justice HARLAN said:

"Assuredly the proposition that Lockridge's complaint was not subject to the exclusive jurisdiction of the NLRB because it charged a breach of contract rather than an unfair labor practice is not tenable. Pre-emption, as shown above, is designed to shield the system from conflicting regulation of conduct. It is the conduct being regulated, not the formal description of governing

legal standards, that is the proper focus of concern."
*Motor Coach, supra,* 403 US 292; 91 S Ct 1920; 29 L Ed
2d 486.

Thus, the question of preemption cannot be de-
cided on semantics as the Idaho courts attempted
to do in *Motor Coach.*

But *Motor Coach* is distinguishable from the
present case. Plaintiff's claim in *Motor Coach* was
cognizable both under § 8 of the Act[11] and the
general common law of contracts. As we have
already determined, plaintiff Local 98's claims are
cognizable only under the common law of torts.
Therefore, *Motor Coach* is inapplicable here.

The lower court erred in ruling that our courts
are without jurisdiction to hear this matter.

Reversed and remanded. Costs to appellants.

McGREGOR, P. J., concurred.

O'HARA, J. *(concurring in result).* While I may
or may not disagree specifically with anything
Judge GILLIS has written, I regard it necessary to
state with precision my reason for voting to re-
verse.

As I read the record and apply the Federal
preemption doctrine in this case, I find a factual
rather than a legal basis requiring me to vote as I
do.

Plaintiff in this case readily concedes that with
respect to the functions reserved by the NLRB[1] to
Flamegas the Federal holding controls.

What plaintiff here is arguing is that if some
construction contractor wants to enter into a con-
tract with plaintiff to do something separate and

---

[11] The Idaho Supreme Court determined that defendant union "did
most certainly" violate §§ 8(b)(1)(A) and 8(b)(2) of the Act.

[1] National Labor Relations Board.

apart from what the NLRB found was the exclusive right of Flamegas to do, that is the business of plaintiff and the contractor. In this case the contractor agreed with plaintiff to have plaintiff "watch" the heaters after they were hooked up. Plaintiff specifically eschewed any right to hook up or *service* the heaters.

So if a contractor chooses to enter into another and different contract with plaintiff here which contract provides for services (even if unneeded) that is the right of that contractor and plaintiff herein.

I'm sure I do not know why any contractor would do this. But that's none of my judicial business. The contractor with whom plaintiff made the additional contract is not complaining to us. The additional services (if any) take nothing from Flamegas which the Board held Flamegas was exclusively entitled to perform.

So whether Flamegas tortiously interfered with the contract between plaintiff and a construction contractor is a litigable question, and the proper subject matter of proofs in the circuit court.

On the foregoing ground alone, I concur in the result reached by Judge GILLIS.

I too would award costs to appellant.