SENIOR ACCOUNTANTS, ANALYSTS AND APPRAISERS
ASSOCIATION v CITY OF DETROIT

1. ESTOPPEL—COLLATERAL ESTOPPEL—RES JUDICATA—ADMINISTRATIVE
   LAW.

   The doctrines of res judicata and collateral estoppel apply to
   administrative determinations which are judicatory in nature
   where a method of appeal is provided and where there is a
   clear legislative intent to make the determination final when
   no appeal is taken.

2. ESTOPPEL—RES JUDICATA—IDENTITY OF PARTIES—IDENTITY OF IS-
   SUES.

   The doctrine of res judicata bars a subsequent suit between the
   same parties or their privies involving the same cause of action
   as that raised in the first suit when the facts or evidence
   essential to the maintenance of both actions are identical.

3. ESTOPPEL—COLLATERAL ESTOPPEL—IDENTITY OF PARTIES—ISSUES
   LITIGATED.

   Collateral estoppel will bar the relitigation of issues previously
   decided in a first action when the parties to the second action
   are the same, but where the second suit is a different cause of
   action the bar is conclusive only as to issues actually litigated
   in the first suit.

4. ESTOPPEL—COLLATERAL ESTOPPEL—IDENTITY OF PARTIES—LABOR RE-
   LATIONS—LABOR UNIONS—UNION MEMBERS—EMPLOYMENT RE-
   LATIONS COMMISSION.

   Individual members of a labor organization are substantially
   identical to the organization itself and are therefore barred by
   collateral estoppel from litigating an issue which was previ-
   ously decided in a proceeding by the labor organization which

REFERENCES FOR POINTS IN HEADNOTES
[1] 2 Am Jur 2d, Administrative Law § 499.
   46 Am Jur 2d, Judgments § 397.
[2–4] 2 Am Jur 2d, Administrative Law §§ 502, 504.
[5] 48 Am Jur 2d, Labor and Labor Relations §§ 1022, 1034, 1063–
   1077.
[6] 28 Am Jur 2d, Estoppel and Waiver § 146.

represented them as charging parties before the Employment Relations Commission.

5. LABOR RELATIONS—PUBLIC EMPLOYMENT RELATIONS ACT—EMPLOYMENT RELATIONS COMMISSION—STATUTES—LEGISLATIVE INTENT —BACK PAY.

The language of the public employment relations act is expressive of the legislative intent to confer upon the Employment Relations Commission the authority to order back pay in appropriate cases (MCLA 423.23[c], 423.216[b]).

6. ESTOPPEL—COLLATERAL ESTOPPEL—BURDEN OF PROOF.

A defendant has met his burden of proving the affirmative defense of collateral estoppel where the records and files of the prior proceedings were accepted by the trial court in the subsequent action without objections of the plaintiffs and those records disclose that the precise issue central to any recovery has been decided adversely to the plaintiff.

Appeal from Wayne, James Montante, J. Submitted Division 1 February 10, 1975, at Detroit. (Docket No. 19584.) Decided April 25, 1975. Leave to appeal applied for.

Complaint by Senior Accountants, Analysts and Appraisers Association and its individual members against the City of Detroit for a declaratory judgment and for damages for breach of contract. Summary judgment for defendant. Plaintiffs appeal. Affirmed.

*George Stone (David N. Walsh,* of counsel), for plaintiffs.

*Elliott S. Hall,* Corporation Counsel, *George Newman,* Deputy Corporation Counsel, and *Ronald Zajac, Michael Harvitz,* and *Frank W. Jackson,* Assistants Corporation Counsel, for defendant.

Before: D. E. HOLBROOK, P. J., and DANHOF and N. J. KAUFMAN, JJ.

DANHOF, J. Plaintiffs filed suit seeking a declara-

tory judgment and damages for breach of contract against their employer, the City of Detroit. Defendant city's motion for summary disposition was granted, and plaintiffs appeal.[1]

This case has been submitted on an agreed statement of facts, GCR 1963, 812.10. Certain of the plaintiffs prior to 1970 were employed in various city departments where, pursuant to Ordinance 90-F and Ordinance 303-G, they were allowed a reduced work schedule of 35 rather than 40 hours per week. On July 17, 1970 the mayor of the City of Detroit ordered all employees to begin working 40 hours per week. This order was held in an action in the Wayne County Circuit Court to be ineffective because, under the ordinances, only department heads had the power to so alter the work schedule. A comparable order was subsequently issued by the appropriate department heads requiring these employees to work 40 hours for the same annual salary they had received for 35 hours of work per week.

On August 24, 1970, many of the unions representing city employees affected by this change filed an unfair labor practice charge with the Michigan Employment Relations Commission. On December 28, 1970, a trial examiner rendered a decision and recommended issuance of a cease and desist order to compel the city to rescind its unilateral action, and also recommending that the employees' claim for back pay for the extra five hours per week be denied. On March 12, 1971, the full Michigan Employment Relations Commission affirmed the trial examiner's decision and order. The City of

---

[1] The grounds asserted in support of the motion were that the issues raised in the complaint were barred by a prior judgment. The motion should properly have been brought under the accelerated judgment provisions of GCR 1963, 116.1(5). *Dunlap v Southfield,* 54 Mich App 398, 399, 400; 221 NW2d 237 (1974).

Detroit filed an application for leave to appeal to this Court which was denied. The affected employees and their unions made no effort to appeal the commission's decision.

In July, 1973, 200 members of the Senior Accountants, Analysts and Appraisers Association brought a class action seeking to recover compensation for the extra time worked during the period of approximately nine months before the cease and desist order was entered. On February 19, 1974, the trial court granted defendant city's motion for a summary judgment accompanied by a letter to the attorneys indicating "that the defense of res judicata and/or collateral estoppel is valid for the reasons and grounds asserted by defendant city in its brief".

The hearing examiner found that the affected employees had on occasion, prior to the order of the department heads, worked more than 35 hours per week, and that there was no indication that they had ever received extra compensation for doing so. The examiner went on to state:

"In the absence of any evidence to establish that under past practice, ordinance, or contract such payment has ever been made for the additional five hours work in a normal work week, or that such payment even could be made under existing City policy, the undersigned can find no basis for a reimbursement remedy herein. Therefore, the undersigned will refuse to recommend any monetary reimbursement or compensatory time as part of the remedy in this case."

On appeal to the full Michigan Employment Relations Commission, the commission unanimously affirmed the examiner and specifically dealt with the back pay issue:

"We have considered the exceptions of the several labor organizations protesting the failure of the Trial Examiner to recommend reimbursement for hours worked by employees in excess of 35 hours during a work week. We are of the opinion that the Trial Examiner reached the correct conclusion for the reasons stated in his Decision. We affirm the Trial Examiner."

The doctrines of res judicata and collateral estoppel apply to administrative determinations which are judicatory in nature where a method of appeal is provided and where the legislative intention to make the determination final when no appeal is taken is clear. *Roman Cleanser Co v Murphy,* 386 Mich 698, 703–704; 194 NW2d 704 (1972), reversing and adopting Judge (now Justice) LEVIN's dissent in *Roman Cleanser Co v Murphy,* 29 Mich App 155, 166–171; 185 NW2d 87 (1970), citing OAG, 1967–1968, No 4628, p 217 (March 25, 1968).

The distinction between the principles of res judicata and collateral estoppel was thoroughly discussed by Judge ALLEN in *Braxton v Litchalk,* 55 Mich App 708, 717–718; 223 NW2d 316 (1974):

"Our examination commences by focusing on the difference between res judicata and collateral estoppel. According to the general rules discussed in *Howell v Vito's Trucking & Excavating Co,* 386 Mich 37, 41–42; 191 NW2d 313 (1971), and *Jones v Chambers,* 353 Mich 674, 680–681; 91 NW2d 889 (1958), the doctrine of res judicata is applicable to a second suit involving the same cause of action as that raised in the first suit, and will bar the relitigation of issues which actually were or might have been presented before the court in the first action. As noted in *Topps-Toeller, Inc v Lansing,* 47 Mich App 720, 726–727; 209 NW2d 843 (1973), *lv den,* 390 Mich 788 (1973), res judicata bars a subsequent suit between the same parties or their privies when the same cause of action is raised in a subsequent suit, and

when the facts or evidence essential to the maintenance of both actions are identical. On the other hand, collateral estoppel will bar the relitigation of issues previously decided in the first action when the parties to the second action are the same; where the second suit is a different cause of action, the bar is conclusive only as to issues actually litigated in the first suit."

The proceedings before MERC were an administrative action designed to end an unfair labor practice. The present suit is for declaratory relief and damages for breach of contract. Thus, the present suit is on a different cause of action, and if it is barred at all, it is barred by application of the doctrine of collateral estoppel.

Plaintiffs advance in this Court three arguments to support their contention that the trial court erred in applying the doctrines of "res judicata and/or collateral estoppel" to summarily dispose of their suit. First, plaintiffs maintain that the parties to the present action are not identical to those involved in the MERC proceedings. The complaint filed with MERC listed nine labor unions, including the Senior Accountants, Analysts and Appraisers Association, as charging parties. The present suit involves the Association, but it is a class action also naming various individual Association members and all employees similarly situated.

The doctrine of collateral estoppel requires "substantial identity" of the parties for its application. *Local 98 of the United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada, AFL-CIO v Flamegas Detroit Corp,* 52 Mich App 297; 217 NW2d 131 (1974). This is particularly so where the doctrine is invoked for "defensive" purposes, as it is here. *Braxton v Litchalk, supra,* 55 Mich

App 719–720. The individual plaintiffs here are substantially identical to the labor organizations which represented them as charging parties before MERC. See *Steelman v Portage,* 12 Mich App 334; 162 NW2d 837 (1968). The commission concluded that, as a matter of fact, the plaintiffs were not entitled to back pay under the circumstances of their employment. The plaintiffs are now estopped to relitigate this particular issue. *Ayers v Genter,* 367 Mich 675, 679; 117 NW2d 38 (1962).

Next, plaintiffs argue that MERC lacks the statutory authority to award back pay, and that consequently the commission's decision can have no binding effect in the present case. This argument is refuted by § 16(b) of the public employment relations act, MCLA 423.216(b); MSA 17.455(16), which provides in pertinent part:

"If upon the preponderance of the testimony taken the board is of the opinion that any person named in the complaint has engaged in or is engaging in the unfair labor practice, then it shall state its findings of fact and shall issue and cause to be served on the person an order requiring him to cease and desist from the unfair labor practice, and to take such affirmative action including reinstatement of employees with or without back pay, as will effectuate the policies of this act."

Identical language is found in the statute setting forth procedures to be followed before MERC, MCLA 423.23(c); MSA 17.454(25)(c). This language can only be read as expressive of the legislative intent to confer upon MERC the authority to order back pay in appropriate cases. Plaintiffs are collaterally estopped to relitigate the issue of back pay which was resolved by the commission's decision

that its statutory authority should not be exercised under the facts of this case.[2]

Finally, plaintiffs maintain that the defendant city has not met its burden of proving the affirmative defense of a former adjudication. The records and files of the prior proceedings before MERC were accepted without apparent objections of the plaintiffs by the lower court in the present action. These records disclose that the precise issue central to any recovery has been decided adversely to the plaintiffs' position in the prior proceedings. Thus, these facts are sufficient to support a finding that the principle of collateral estoppel is applicable; the defendant has sustained its burden of proof. See *Snider v Dunn,* 33 Mich App 619, 624–625; 190 NW2d 299 (1971).

Affirmed. No costs, a public question.

---

[2] At the risk of generating dicta, we note that the plaintiffs are correct in asserting that MERC lacks the authority to award punitive damages, because such would not "effectuate the policies of" the act. Nevertheless, in the present case, the issue of damages could not be reached in the circuit court because the plaintiffs were collaterally estopped from relitigating the factual determination that the defendant was not in breach of contract.