JACKSON DISTRICT LIBRARY v JACKSON COUNTY

Docket No. 78010. Argued January 15, 1987 (Calendar No. 19).
Decided July 22, 1987.

Jackson County and the City of Jackson entered into an agree-
ment in 1978, pursuant to the district library act, establishing
the Jackson District Library. Under the act, municipalities may
combine resources to establish joint libraries operated by inde-
pendent boards of trustees. All financial obligations of the
Jackson District Library were the responsibility of the library
alone and not of the city or county. Funding was provided by a
property tax levy of one mill, which had been approved by the
voters for a period of twenty years. On November 10, 1982, the
Jackson County Board of Commissioners directed that the
library millage be reduced from one mill to 0.9651 mills,
pursuant to the truth in taxation act. The Jackson District
Library petitioned the Tax Tribunal challenging the millage
rollback. The Tax Tribunal granted summary judgment for the
respondents holding that the tribunal did not have subject
matter jurisdiction of the library's claims and that the library
had failed to state a claim for which relief could be granted.
The Court of Appeals, MacKenzie, P.J., and Hood and Mies,
JJ., affirmed in part and reversed in part in an opinion per
curiam, finding that the Tax Tribunal had jurisdiction and that
the library was not an authority within the meaning of the
truth in taxation act (Docket No. 80611). The petitioner ap-
peals.

In an opinion by Justice Levin, joined by Justices Brickley,
Cavanagh, and Archer, the Supreme Court held:

Constituent municipalities that establish a district library
together constitute a single authority, independent of the mu-
nicipalities, within the meaning of the truth in taxation act. A
constituent municipality is without power unilaterally to re-

REFERENCES

Am Jur 2d, Municipal Corporations, Counties, and Other Political
Subdivisions §§ 202, 203, 542
Am Jur 2d, State and Local Taxation §§ 86 et seq.
See the annotations in the Index to Annotations under Libraries
and Librarians.

duce millage approved by the voters for the establishment of a district library. In this case, the one mill levied in support of the district library was exempt from the rollback otherwise required by the truth in taxation act.

1. Under the district library act, municipalities may combine resources to establish joint libraries. The libraries are operated by independent boards of trustees chosen by the governing bodies of the municipalities or the voters. The establishment of a district library is a mutual endeavor by which each constituent municipality waives its right to make unilateral decisions concerning the library.

2. The truth in taxation act requires a local taxing unit to reduce millage levied for operating purposes if the tax rate would produce more revenue in the ensuing year than in the concluding year. The act exempts a "local unit of government" that levied ad valorem property taxes for operating purposes of one mill or less for its concluding fiscal year. A "local unit of government" within the meaning of the truth in taxation act includes a city, county, or other authority. Constituent municipalities that form a district library together constitute authorities within the meaning of the truth in taxation act, separate and apart from the constituent municipalities.

3. In this case, Jackson County entered into an agreement with the City of Jackson to create the Jackson District Library. The union of the city and the county constitutes a single authority. The one-mill levy voted by the people of Jackson County to fund the library was properly under the control of that authority. It is not part of either the city's or the county's general tax levy and thus is exempt from the requirements of the truth in taxation act. It therefore was not necessary to roll back the levy, and Jackson County exceeded its authority when it did so.

Reversed and remanded.

Justice BOYLE, concurring in part and dissenting in part, stated that it is the union of municipalities under § 2(2) of the district library act that constitutes a single independent authority. In this case, the library was established pursuant to § 2(1) of the act and, therefore, is not a local unit of government that levied ad valorem property taxes.

Chief Justice RILEY, dissenting, stated that the Jackson District Library, which was established pursuant to § 2(1) of the district library act, is not a local unit of government that levied ad valorem property taxes independent of the municipalities which jointly created it and is not within the exception of the truth in taxation act.

Justice GRIFFIN took no part in the decision of this case.

146 Mich App 412; 380 NW2d 116 (1985) reversed.

TAXATION — DISTRICT LIBRARIES — MILLAGE ROLLBACK.

Constituent municipalities that establish a district library to-
gether constitute a single authority, independent of the munici-
palities, within the meaning of the truth in taxation act; a
constituent municipality is without power unilaterally to re-
duce millage approved by the voters for the establishment of a
district library (MCL 211.24e(1)(g), 397.271 *et seq.;* MSA
7.24(5)(1)(g), 15.1780(1) *et seq.*).

*Foster, Swift, Collins & Coey, P.C.* (by *Patrick R. Van Tiflin*), for the plaintiff.

*Brian E. Thiede* for the defendants.

Amici Curiae:

*Miller, Canfield, Paddock & Stone* (by *George T. Stevenson* and *Cynthia B. Faulhaber*) for Plymouth District Library, Ypsilanti District Library, and Genesee District Library.

LEVIN, J. The questions presented are whether the Jackson District Library is exempt from the rollback otherwise required by the truth in taxation act because it is an "authority" and one mill or less was levied for its support, and whether Jackson County, one of the two municipalities that united to form the Jackson District Library, could unilaterally reduce the millage the voters approved for the establishment of the library. We hold that the constituent municipalities that establish a district library constitute a single independent authority within the meaning of the truth in taxation act.[1] We further hold that a constituent municipality is without power to reduce the millage approved by the voters for the establishment of a district library.

I

The Jackson District Library was established

[1] MCL 211.24e(1)(g); MSA 7.24(5)(1)(g).

pursuant to the district library act.[2] The act provides that municipalities may combine their resources to establish joint libraries.[3] The libraries are operated by independent boards of trustees that are chosen by the governing bodies of the constituent municipalities or by the voters.[4] Jackson County is one of two municipalities that formed the Jackson District Library; the other is the City of Jackson.

On January 1, 1978, Jackson County and the City of Jackson entered into an agreement establishing the Jackson District Library. This agreement was entered into pursuant to resolutions previously adopted by the county board and the city commission. The stated purpose of the agreement was to consolidate resources of the city and the county and thereby to improve the quality of public library services available to residents of the city and county.

The agreement provided that the city and the county each would make real property available for the establishment of a district library, and transfer books and other property to the district library. It also established a board of trustees to run the library. The board was to have sole responsibility for the operation and management of the library. Among other things, the library board was to establish a yearly budget, to appoint librari-

[2] MCL 397.271 et seq.; MSA 15.1780(1) et seq.

[3] Section 1 of the district library act provides:

> Any municipality empowered by law to establish or maintain libraries or library services may coöperatively develop a plan and unite with any other municipality or municipalities for the establishment and operation of a district library.
>
> The term "municipalities" as used in this act shall include cities, villages, school districts, townships and counties. [MCL 397.271; MSA 15.1780(1).]

[4] MCL 397.273; MSA 15.1780(3).

ans, to purchase books and other equipment, to purchase sites for buildings, to enter into contracts, and to make rules and regulations regarding use of the library.

It was further agreed that all financial obligations of the Jackson District Library were the responsibility of the library alone and not of the city or the county. Funding for the library was provided by a property tax levy of one mill, which had earlier been approved by county voters[5] for a period of twenty years.

The Jackson County Board of Commissioners, on November 10, 1982, directed that the library millage be reduced from one mill to 0.9651 mills, asserting that this rollback was required by the truth in taxation act. The truth in taxation act was enacted in 1982.[6] It requires a local "taxing unit" to reduce the millage levied for operating purposes if the tax rate would produce more revenue in the ensuing year than in the concluding year. A taxing unit that wishes to avoid a rollback in its millage is obliged to hold a public hearing on the desirability of exceeding the revenue limit.[7]

---

[5] The millage proposal that the voters approved read as follows:

JACKSON COUNTY, MICHIGAN
SPECIAL ELECTION, AUGUST 2, 1977
PROPOSITION
INCREASE IN MILLAGE FOR LIBRARY PURPOSES
Shall the limitation on the total amount of taxes which may be imposed upon all property in the County of Jackson be increased by 1.00 mill on each dollar ($1.00 per $1,000.00) of the assessed valuation, as equalized, for a period of twenty (20) years, 1977 to 1996, inclusive, said millage increase to be used exclusively for the purpose of establishing and operating a single public library system in Jackson County?

[6] 1982 PA 5, MCL 211.24e; MSA 7.24(5).

[7] The basic requirements of the truth in taxation act are set forth in subsections (2) and (3) of the act:

The act excepts, in subsection 12, "a local unit of government that levied ad valorem property taxes for operating purposes of 1 mill or less for its concluding fiscal year."[8]

Jackson District Library contends that as a district library it is a local unit of government for whose support one mill or less is levied, and that it is therefore exempt from the requirements of the truth in taxation act. The truth in taxation act provides:

> "Local unit of government" or "taxing unit" means a city, village, township, charter township, county, charter county, local school district, intermediate school district, community college district, or authority. [MCL 211.24e(1)(g); MSA 7.24(5)(1)(g).]

Jackson District Library contends that a district

> (2) Except as provided by subsection (3), the governing body of a taxing unit shall not levy ad valorem property taxes for operating purposes for an ensuing fiscal year of the taxing unit which yield an amount more than the sum of the taxes levied at the base tax rate on additions within the taxing unit for the ensuing fiscal year plus an amount equal to the taxes levied for operating purposes for the concluding fiscal year on existing property.
>
> (3) A governing body of a taxing unit may approve a levy of an additional millage rate only after providing the notice required by subsections (6) and (9), holding a public hearing of the governing body as prescribed by subsection (6), and adopting a separate resolution or ordinance of the governing body approving the levy of the additional millage rate. [MCL 211.24e(2), (3); MSA 7.24(5)(2), (3).]

[8] Subsection 12 of the truth in taxation act in its entirety reads as follows:

> This section shall apply to a fiscal year of a taxing unit for which ad valorem property taxes are levied in 1982 or in any year thereafter. This section shall not apply for the ensuing fiscal year of a local unit of government that levied ad valorem property taxes for operating purposes of 1 mill or less for its concluding fiscal year. [MCL 211.24e(12); MSA 7.24(5)(12).]

library is an "authority" within the intendment of this definition.

Jackson County counters that it is the individual municipalities which join to create a district library that constitute authorities—separate authorities—within this definition. The county contends that the one-mill levy at issue in the instant case is a county tax. It claims that it was required to roll back the millage pursuant to the truth in taxation act because its overall budget, including the library budget, was greater than one mill.

The Jackson District Library commenced an action in the circuit court complaining of the rollback in millage. The first two counts of this complaint were dismissed for lack of subject matter jurisdiction, and a petition containing two virtually identical counts was filed with the Tax Tribunal. The third count concerned the Jackson District Library's eligibility as an "authority" for a share of single business tax reimbursement from the state and is the subject matter of a decision of the Court of Appeals.[9]

The Tax Tribunal granted Jackson County's motion for summary judgment on the ground that the tribunal did not have subject matter jurisdiction of the Jackson District Library's claims and that it had failed to state a claim for which relief could be granted. The Court of Appeals found that the Tax Tribunal had jurisdiction and ruled that the Jackson District Library was not an authority within the meaning of the truth in taxation act.[10]

We hold that the constituent municipalities that form a district library *together* constitute an au-

[9] *Jackson Dist Library v Jackson Co #1*, 146 Mich App 392; 380 NW2d 112 (1985). The third count is relevant to Jackson District Library's collateral estoppel argument, which is discussed in part II.

[10] See *Jackson Dist Library v Jackson Co #2*, 146 Mich App 412; 380 NW2d 116 (1985).

thority within the meaning of the truth in taxation act, and that this authority is an authority separate and apart from either the city or the county. The one mill levied in support of the district library was therefore exempt from the rollback otherwise required by the truth in taxation act. We further hold that under the district library act, Jackson County lacked the power unilaterally to roll back the one mill appropriated for the Jackson District Library.

II

We first address Jackson District Library's claim that Jackson County is barred by the doctrine of collateral estoppel from contesting that Jackson District Library is an "authority" within the meaning of the truth in taxation act.

The circuit court granted summary judgment for Jackson County on the third count of the Jackson District Library's original complaint, finding that it was not an authority within the meaning of the Single Business Tax Act, MCL 208.1 *et seq.;* MSA 7.558(1) *et seq.* The Court of Appeals reversed in part,[11] holding that the Jackson District Library was an authority under this act, and it remanded the case for further proceedings. Jackson District Library now claims that the decision of the Court of Appeals precludes Jackson County from contesting in the instant case that Jackson District Library is an authority for purposes of the truth in taxation act.

The doctrine of collateral estoppel "means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the

---

[11] See *Jackson Co #1,* n 9 *supra.*

same parties in any future lawsuit."[12] The doctrine applies only when the issue to be decided is the same as an issue determined in previous litigation. If the issues are not the same, the doctrine of collateral estoppel is not applicable.[13]

The questions whether the Jackson District Library was an authority within the meaning of the Single Business Tax Act and whether it is an authority within the meaning of the truth in taxation act are not the same. These are two different acts, and an entity could be an authority for purposes of one act, but not for purposes of the other. A final judgment has not previously been rendered on the question whether Jackson District Library is an authority under the truth in taxation act, and accordingly the doctrine of collateral estoppel is not applicable.

III

We now consider whether Jackson District Library is an authority within the meaning of the truth in taxation act. In part IV, we consider whether Jackson County was empowered under the district library act unilaterally to roll back the one mill that the voters had authorized for the Jackson District Library.

The truth in taxation act does not contain a definition of "authority." The Court of Appeals defined the term "authority" by reference to the fifteen-mill limitation in the constitution.[14] The

[12] *Ashe v Swenson,* 397 US 436, 443; 90 S Ct 1189; 25 L Ed 2d 469 (1970).

[13] See *Local 98 v Flamegas Detroit Corp,* 52 Mich App 297; 217 NW2d 131 (1974); *Berkaw v Mayflower Congregational Church,* 378 Mich 239; 144 NW2d 444 (1966); *Fifield v Edwards,* 39 Mich 264 (1878). See also 1 Restatement Judgments, § 68(2), p 293.

[14] The foregoing limitations shall not apply to taxes imposed

Court of Appeals concluded that because the motivation for both the fifteen-mill limitation and the truth in taxation act was property tax limitation, the term "authority" in the truth in taxation act has the same meaning as that term has in the fifteen-mill limitation. The Court of Appeals then, without separate consideration of what the term "authority" means for purposes of the fifteen-mill limitation, looked to the district library act to determine the meaning of the term. The Court referred to § 4a of the district library act, which states:

> The municipalities which unite for the establishment and operation of a district library pursuant to section 2(2) of this act shall constitute an authority under section 6 of article 9 of the state constitution of 1963.[15]

The Court read § 4a as meaning that it is the constituent municipalities and not the district library that constitute authorities under the truth in taxation act.

Section 4a provides that the municipalities which unite for the establishment and operation of

for the payment of principal and interest on bonds approved by the electors or other evidences of indebtedness approved by the electors or for the payment of assessments or contract obligations in anticipation of which bonds are issued approved by the electors, which taxes may be imposed without limitation as to rate or amount; or, subject to the provisions of Section 25 through 34 of this article, to taxes imposed for any other purpose by any city, village, charter county, charter township, charter authority *or other authority,* the tax limitations of which are provided by charter or by general law. [Emphasis added. Const 1963, art 9, § 6.]

15 MCL 397.274a; MSA 15.1780(4a).

Although municipalities that so unite for the establishment and operation of a district library pursuant to § 2(1) might not constitute an authority for the purposes of the fifteen-mill limitation (Const 1963, art 9, § 6; see n 14 for text), this does not mean that they do not constitute an authority for another purpose.

a district library constitute *an* authority for purposes of the fifteen-mill limitation. We read these words as meaning that it is the constituent municipalities *together* that constitute a single authority. The individual municipalities are not each an authority for the purposes of the truth in taxation act. Rather, it is the union of municipalities that is the authority.

The amici curiae, Plymouth, Ypsilanti, and Genesee District Libraries, argue that § 4a does not apply to the Jackson District Library because by its terms § 4a applies only to municipalities that united for the establishment and operation of a district library pursuant to § 2(2)[16] of the district library act. Amici curiae assert that the Jackson District Library was formed pursuant to § 2(1)[17] of the district library act. This argument has not been raised by the parties or addressed in their briefs.[18]

---

[16] MCL 397.272(2); MSA 15.1780(2)(2).

[17] MCL 397.272(1); MSA 15.1780(2)(1).

[18] Section 2 of the district library act reads as follows:

(1) The proposal to unite for the establishment and operation of a district library shall be submitted to the governing or legislative body of each municipality in the proposed district, and the vote of a majority of the members of each of those bodies shall be necessary for the adoption of the proposal.

(2) If the governing or legislative body of a municipality submits the proposal for the establishment and operation of the district library to a vote of the people, a majority of those voting on the question in the municipality shall be necessary for the adoption of the proposal. [MCL 397.272; MSA 15.1780(2).]

Subsection 1 of § 2 was part of the original enactment of the district library act, 1955 PA 164. Subsection 2 and § 4a were added by 1978 PA 465, subsequent to the adoption, on July 5, 1977, of a joint resolution whereby the City of Jackson and Jackson County agreed to consider adopting a proposal to unite for the establishment and operation of a district library, and subsequent to the vote of the people on August 2, 1977, and the execution of the January 1, 1978 agreement between the city and the county.

Section 2(1) provides that a proposal to "unite" for the establishment and operation of a district library shall be submitted to the vote of the governing or legislative body of each municipality in the proposed district. Thus, whether organized under § 2(1) or § 2(2), the municipalities "unite" for the establishment and operation of a district library.[19] In so doing they together create and constitute an authority separate and apart from the constituent municipalities.

It has been said that an authority is "generally established by a special act which, among other things, prescribes the organization and structure of the body to be established and its operational methods, and confers appropriate powers."[20] The Jackson District Library was established pursuant to a special act that prescribed the organization and structure of the body to be established and its operational methods, and conferred appropriate powers.

We conclude that the one-mill levy voted by the people of Jackson County is properly under the control of an independent authority constituted jointly by the city and county. This one-mill levy is not part of either the city's or the county's general tax levy, and is exempt from the requirements of

Although the vote of the people preceded the 1978 amendments, the proposal for the establishment and operation of the district library was submitted to a vote of the people. We recognize that it may be questioned how municipalities could unite for the establishment and operation of a district library pursuant to § 2(2) before § 2(2) was enacted, but we are of the opinion that we should leave the question open because the parties have assumed in their presentations, and the opinion of the Court of Appeals proceeds on the assumption, that § 4a is applicable and that the City and County of Jackson united pursuant to § 2(2).

[19] This is actually clearer under § 2(1) than under § 2(2) because the word "unite" appears in § 2(1) and not in § 2(2), although the approval of a proposal under § 2(2) is characterized in § 4a as a uniting of municipalities for this purpose.

[20] 1 McQuillin, Municipal Corporations, § 2.29a, p 174.

the truth in taxation act pursuant to subsection 12 of that act. It was not necessary, therefore, to roll back the one mill to comply with the requirements of the truth in taxation act.

IV

Having determined that the truth in taxation act did not require Jackson County to roll back the one-mill tax levy, we now consider whether Jackson County nevertheless had the power to do so in its discretion.

Jackson County claims that the one-mill levy was a county tax and that it therefore had the authority unilaterally to reduce the millage in the exercise of its general fiscal powers. The ballot proposal, it argues, was authorized by the county and was approved by county voters. The proposition presented to the voters made no reference to a district library, and merely authorized the county to use the millage for the purpose of establishing and operating a public library system in Jackson County. The county could have created its own library system, it argues, which would have supplanted the city library and would not have involved the city at all. Further, the city-county agreement provides only that such portion of the one mill as is in fact levied shall go to the district library. The agreement does not confer on the city the right to demand that a full mill be levied; rather, the county alone has control over the amount to be levied in any given year.

While Jackson County might have used the proceeds of the one-mill levy to create a county library and might then have had the power to roll back this levy in its discretion, Jackson County did not create a county library. It entered into an agreement with the City of Jackson to create a

district library, pursuant to the district library act. By entering into this joint arrangement with the City of Jackson, Jackson County gave up whatever right it might otherwise have had to make unilateral decisions regarding the amount of tax to be levied in a given year.

The establishment of a district library by two or more municipalities is a mutual endeavor. By entering into such an endeavor, each municipality waives its right to make decisions about the library unilaterally. Thus, even if the Jackson District Library were supported entirely by county funds, Jackson County does not have the authority to reduce the library's operating millage unilaterally.

Although the proposal submitted to the people was submitted under the auspices of the county, it was approved by the voters of both the city and the county at large, city voters being a subclass of county voters. City residents pay taxes to support the library, the same as residents of the county who do not live in the city. The city as well as the county donated property and assets to establish the district library, including books, periodicals, reference materials, equipment, fixtures, supplies, and motor vehicles. The Jackson District Library is thus by no means the creation of Jackson County alone.[21]

---

[21] The resolutions passed by the city and county indicate that the decision to submit the tax levy proposal to the voters of the county may have been based on a mutual understanding on the part of the city and county to establish a district library through a county-sponsored millage proposal. The proposal to levy one mill was approved by county voters on August 2, 1977. The city commission passed its resolution to unite with the county on August 23, 1977. The county passed its resolution on September 8, 1977.

Both resolutions began with the following language:

RESOLUTION
BY THE CITY COMMISSION:

WHEREAS, *discussions have taken place* between representa-

Although the agreement between the city and the county limited the tax levy to a maximum of one mill, and indicated that less than one mill might be levied,[22] this does not mean that the county had the authority to determine the amount of the levy in a given year. The agreement merely implies that less than a full mill could be levied in a given year; it does not say who has the power to make that decision. We need not decide whether it is the board of the Jackson District Library, or the city and county jointly, or the voters that have the power to decide whether less than a full mill shall be levied in a given year. We hold only that

tives of the City of Jackson, the County of Jackson and other interested parties, relative to a proposal to coöperatively develop a single library system to serve the citizens of the City of Jackson and the County of Jackson . . . . [Emphasis added.]

These resolutions were adopted only a few weeks after the millage proposal was adopted by the voters. It thus appears that the city and county had planned to use the tax levy for a joint library before the proposal was placed on the ballot. The city participated in the decision to submit the millage proposal to the voters. The decision to have the county alone sponsor the millage proposal, rather than the city and county jointly, may have been made for reasons of convenience. Because city voters were also automatically county voters, there was no need to hold separate city and county elections.

[22] Paragraph 2 of the agreement provides:

The proceeds of the property tax levy (authorized by the voters at an election held on August 2, 1977, at a maximum of one mill for a period of 20 years, to finance a single library system in Jackson County) shall be made available to the Board of Trustees of the Jackson District Library to finance the activities of the Jackson District Library. In any calendar year in or for which more than two-thirds (⅔) of a mill is so levied, no more than an amount equal to two-thirds (⅔) of the tax revenues which would be raised by the levy of a full mill shall be used by the Board of Trustees of the Jackson District Library for operating purposes. In any calendar year in or for which two-thirds (⅔) or less of a mill is so levied, there shall be no limitation on the amount of the revenues therefrom which may be used by the Board of Trustees of the Jackson District Library for operating purposes.

Jackson County cannot make this decision unilaterally.

We conclude that Jackson County exceeded its authority when it rolled back the millage approved for the library from one mill to 0.9651 mills. The truth in taxation act did not require that this millage be rolled back. The Jackson Board of Commissioners thus had a duty to direct that this millage be spread on the assessment rolls.[23]

We reverse the decision of the Court of Appeals, and remand the case to the Tax Tribunal for further proceedings consistent with this opinion.

BRICKLEY, CAVANAGH, and ARCHER, JJ., concurred with LEVIN, J.

BOYLE, J. (*concurring in part and dissenting in part*). I concur in Chief Justice RILEY's conclusion that appellant was established pursuant to § 2(1) of the district library act, and therefore is not a local unit of government that levied ad valorem property taxes.

I also agree with Justice LEVIN's conclusion that the Court of Appeals improperly construed § 4a of the act. Pursuant to § 4a, it is the union of the municipalities created under § 2(2) of the act that constitutes a single independent authority.

I would therefore affirm the decision of the Court of Appeals in part and reverse in part.

RILEY, C.J. (*dissenting*). The exception in § 24e of the truth in taxation act applies to "a local unit of government that levied ad valorem property taxes for operating purposes of 1 mill or less for its concluding fiscal year."[1] I am convinced that appellant, which each party in this Court has agreed

[23] See MCL 211.37; MSA 7.55; *Delta College v Saginaw Co Bd of Comm'rs*, 395 Mich 562; 236 NW2d 425 (1975).

[1] MCL 211.24e(12); MSA 7.24(5)(12).

was established pursuant to § 2(1) of the district library act,[2] is not "a local unit of government that levied ad valorem property taxes . . . ." Rather, as reasoned by the Court of Appeals,[3] and consistent with the conclusion in the majority opinion in this Court, those taxes were levied by its parent municipality, the county appellee.

Inasmuch as appellant was established pursuant to § 2(1) of the district library act, however, I would expressly limit the decision in this case, unlike the Court of Appeals, to libraries established under that section. Consistent with the operative provisions of the act that apply to libraries established pursuant to § 2(1), including § 5 which relates to the appropriation of funds for the operation of such libraries,[4] and the agreement between appellee and the City of Jackson,[5] I would

---

[2] MCL 397.271 *et seq.;* MSA 15.1780(1) *et seq.* In addition to the amici curiae, both appellant and appellee have expressly acknowledged in this Court, both in their briefs and at oral argument, that appellant was established pursuant to § 2(1) of the district library act prior to the effective date of its amendment adding § 2(2).

[3] 146 Mich App 412; 380 NW2d 116 (1985).

[4] The applicable provisions of § 5 state:

> The sums necessary for the establishment and operation of a district library shall be appropriated by the governing or legislative boards of the municipalities entering into the formation of the district library, or by a tax levy for this purpose authorized by a vote of the qualified electors in a participating municipality . . . .

Unlike other enabling statutes in which the Legislature has expressly delegated its taxing authority, the applicable provisions of § 5 of the district library act do not give the library Board of Trustees the power to tax. Rather, the burden of financing appellant was placed upon the municipalities. Cf. MCL 331.4; MSA 5.2456(4) (Joint Hospital Authority); MCL 119.57; MSA 5.2148(7) (Huron-Clinton Metropolitan Authority); MCL 121.16; MSA 5.2533(46) (Charter Water Authorities).

[5] Paragraph 9 of that agreement provides:

> In each year that the Jackson District Library is operated, the Board of Trustees of the Jackson District Library shall prepare and adopt a library budget for the following fiscal year. A copy of each library budget which is adopted by the Board of

conclude that appellant is not a "taxing unit"[6] independent of the municipalities which jointly created it. Thus, I would affirm the decision of the Court of Appeals.

GRIFFIN, J., took no part in the decision of this case.

Trustees of the Jackson District Library shall be submitted to the City and the County within ten (10) days after adoption thereof.

Additionally, I would note that, pursuant to the agreement between appellee and the City of Jackson, the full one-mill increase in the maximum limitation on ad valorem property taxes authorized by a vote of the people of Jackson County in 1977 for the purpose of funding a single public library system need not be assessed in any given year.

[6] MCL 211.24e(1)(g); MSA 7.24(5)(1)(g) provides:

"Local unit of government" or "taxing unit" means a city, village, township, charter township, county, charter county, local school district, intermediate school district, community college district, or authority.