ELLISON v WAYNE COUNTY GENERAL HOSPITAL

Docket No. 78-4471. Submitted June 25, 1980, at Detroit.—Decided October 22, 1980. Leave to appeal applied for.

Genevieve J. Ellison brought an action against Wayne County General Hospital, John R. Gosling, M.D., Joseph L. Wilkis, M.D., Judith Pagano, M.D., and Lance A. Talmage, M.D., alleging medical malpractice. Defendant hospital moved for accelerated judgment on the grounds of governmental immunity, which motion was granted. Following trial, verdicts of no cause of action were returned in favor of the other defendants, Wayne Circuit Court, Roland Olzark, J. Plaintiff appeals, alleging that the trial court erred in granting the hospital's motion for accelerated judgment, in admitting certain testimony to impeach plaintiff's expert witness, in refusing to give her requested jury instruction on her theory of the case, and in refusing to give her supplemental jury instruction on negligence. *Held:*

1. The trial court erred in granting defendant hospital's motion for accelerated judgment, but such error does not necessitate a remand for full trial since plaintiff pled nothing of substance against the hospital which she did not try and lose against the defendant doctors. Neither may plaintiff relitigate the doctors' alleged acts of negligence against the hospital. She is collaterally estopped.

2. The admission of testimony by a defense expert regarding

REFERENCES FOR POINTS IN HEADNOTES
[1] 40 Am Jur 2d, Hospitals and Asylums §§ 20, 21.
  Immunity of municipal corporation from liability for damages in tort in operating hospital. 25 ALR2d 203.
[2] 57 Am Jur 2d, Municipal, School, and State Tort Liability § 67.
[3] 5 Am Jur 2d, Appeal and Error §§ 936, 962, 963.
[4] 53 Am Jur 2d, Master and Servant § 418.
[5] 46 Am Jur 2d, Judgments §§ 518, 519.
[6-8] 46 Am Jur 2d, Judgments § 521.
[9] 31 Am Jur 2d, Expert and Opinion Evidence § 67.
[10] 75 Am Jur 2d, Trial §§ 573, 574.
[11, 12] 75 Am Jur 2d, Trial § 608.
  76 Am Jur 2d, Trial § 1045.

a learned treatise for the purpose of impeaching plaintiff's expert witness was proper.

3. The trial court did not err in refusing to give plaintiff's instruction to the jury on her theory of the case. The trial court requested plaintiff to shorten her instruction, and, upon her refusal, properly gave its own shortened version.

4. The trial court did not abuse its discretion in refusing to read plaintiff's requested supplemental instruction on negligence which it felt would confuse the jury regarding the liability of each party.

Affirmed.

1. TORTS — HOSPITALS — GOVERNMENTAL IMMUNITY — RETROACTIVE APPLICATION OF RULE.

A county hospital does not enjoy governmental immunity, and this rule applies retroactively to all cases pending on the date of its annunciation in which an express challenge to the defense of governmental immunity was made and preserved.

2. MOTIONS AND ORDERS — ACCELERATED JUDGMENT — GOVERNMENTAL IMMUNITY — HOSPITALS — STATES — RETROACTIVE APPLICATION OF RULE.

The granting of a motion for accelerated judgment in favor of a county hospital claiming governmental immunity constitutes error where such claim was expressly challenged and an appeal of the ruling was pending on the date that the rule that a county hospital does not enjoy governmental immunity was annuniciated.

3. MOTIONS AND ORDERS — ACCELERATED JUDGMENT — IMPROPER GRANT OF MOTION — REMEDY.

The improper granting of a motion for accelerated judgment generally necessitates a remand for a full trial.

4. NEGLIGENCE — LIABILITY — RESPONDEAT SUPERIOR — PRIMARY LIABILITY.

A party cannot be liable for negligence on a theory of *respondeat superior* if the persons having primary responsibility are not liable.

5. PARTIES — ERRONEOUS DISMISSAL OF PARTIES — RELITIGATION OF ISSUES.

An issue of fact determined in a trial between parties may be relitigated against a party erroneously dismissed from a suit if there is no mutuality between him and the party to the first trial.

6. PARTIES — COLLATERAL ESTOPPEL — MUTUALITY.

The doctrine of collateral estoppel does not apply in the litigation of an issue of fact previously determined in the absence of mutuality between the parties.

7. PARTIES — COLLATERAL ESTOPPEL — MUTUALITY — SUBSTANTIAL IDENTITY BETWEEN PARTIES.

Mutuality exists in the consideration of collateral estoppel where there is substantial identity between the parties to two separate adjudications.

8. PARTIES — COLLATERAL ESTOPPEL — ABSENCE OF MUTUALITY — RELATIONSHIPS OF PARTIES.

A defensive assertion of collateral estoppel may be applied in the absence of mutuality where there is a relationship of master-servant, principal-agent, or indemnitor-indemnitee.

9. EVIDENCE — LEARNED TREATISE — IMPEACHMENT OF EXPERT WITNESSES — RULES OF EVIDENCE.

A learned treatise may be used for impeachment of an expert witness (MRE 707).

10. TRIAL — JURY INSTRUCTIONS — THEORY OF CASE.

A trial court may give its own theory of a party's case during instructions to a jury if it presents the material substance of the issues, *i.e.*, the legal principles and factual propositions supporting the party's position.

11. TRIAL — JURY INSTRUCTIONS — SUPPLEMENTAL INSTRUCTIONS.

A trial court is required to include applicable supplemental instructions to a jury that fairly state the law, and it does not commit error where its own wording of nonstandard instructions conveys the substance of the law.

12. TRIAL — JURY INSTRUCTIONS — CONFUSING SUPPLEMENTAL INSTRUCTIONS.

The decision whether to use a requested supplemental instruction to a jury rests within the discretion of a trial court, and such discretion is not abused where the trial court properly refuses to read a requested instruction which it considered confusing.

*The Jaques Admiralty Law Offices, P.C.* (by *Robert E. Swickle),* for plaintiff.

*Kitch, Suhrheinrich, Smith, Saurbier & Drut-*

*chas, P.C.* (by *Brian J. Doren*), for defendants Gosling, Wilkis, Pagano and Talmage.

Before: J. H. Gillis, P.J., and V. J. Brennan and A. C. Miller,* JJ.

V. J. Brennan, J. In this action, plaintiff's complaint alleged that five physicians associated with defendant hospital were culpable of medical malpractice in the delivery of plaintiff's baby. The circuit court granted defendant hospital's motion for accelerated judgment on the grounds of governmental immunity. Plaintiff voluntarily dismissed her suit against one of the defendant physicians and proceeded against the remaining four in a jury trial. The jury returned verdicts of no cause of action in favor of each of the defendants. Plaintiff appeals, and we affirm.

On June 24, 1972 plaintiff, then 40 years old, entered Wayne County General Hospital for the expected delivery of her seventh child. Dr. Pagano, a second-year resident, administered a drug called "pitocin" to induce labor. Dr. Wilkis, the chief resident in obstetrics, delivered a normal and healthy nine-pound, two-ounce child through the use of the "Barton's forceps" method. When plaintiff's placenta did not discharge naturally, Dr. Wilkis removed it manually. While doing so he noticed that plaintiff's uterus had ruptured and decided that a total hysterectomy was necessary. Dr. Wilkis thereupon consulted Dr. Lance Talmage, chief resident in gynecology, and Dr. John Gosling, supervisor of these residents. Dr. Gosling gave Dr. Talmage permission to perform the hysterectomy without an attending staff physician. Dr. Talmage thereupon returned to the hospital

---

* Circuit judge, sitting on the Court of Appeals by assignment.

and performed the operation assisted by Drs. Wilkis and Pagano. During this operation, plaintiff's left ureter developed a hole as the result of either an incision or a natural tearing related to the hysterectomy. As a result, plaintiff developed urinary tract difficulties which remained despite two subsequent surgical procedures.

Plaintiff advanced several theories of malpractice. Defendant doctors claimed that they performed to the requisite standard of care and that their decisions represented the exercise of sound medical judgment. Apparently the jury agreed, as it returned verdicts of no cause of action in favor of each of the defendants.

Plaintiff raises four issues on appeal, none of which requires reversal and only one which need be extensively addressed.

Initially, plaintiff correctly claims that the Supreme Court has decided that a county hospital does not enjoy governmental immunity, *Parker v Highland Park,* 404 Mich 183; 273 NW2d 413 (1978). Subsequently, two panels of this Court decided that *Parker* is to be applied retroactively, *Berkowski v Hall,* 91 Mich App 1; 282 NW2d 813 (1979). *Pearsall v Williams,* 93 Mich App 231; 285 NW2d 806 (1979). Recently, the Supreme Court addressed the issue of *Parker's* retroactivity in *Murray v Beyer Memorial Hospital,* 409 Mich 217, 221; 293 NW2d 341 (1980). "[T]he rule of *Parker* is to be applied to all cases pending on December 27, 1978 in which an express challenge to the defense of governmental immunity was made and preserved as well as all cases started after that date."

In the instant case, defendant hospital filed its motion for accelerated judgment based on governmental immunity on March 25, 1974. Plaintiff's response to this motion, filed April 29, 1974, ex-

pressly challenged the hospital's defense of governmental immunity. On June 14, 1974, the circuit judge issued his opinion dismissing the hospital as a party defendant with prejudice. Thus, on December 27, 1978, the case was pending, a claim of appeal having been filed with this Court on October 23, 1978.

Plaintiff is, therefore, correct in her assertion that accelerated judgment in favor of the hospital was erroneous. While generally the improper granting of a motion for accelerated judgment necessitates a remand for full trial, we find that, under the circumstances presented here, such a remedy would be superfluous.

Our review of the pleadings reveals that plaintiff pled no theory of liability against the hospital not predicated upon the liability of an individual doctor for which it was responsible. Count I alleged lack of informed consent because the hospital and each of the defendants failed to inform plaintiff that the hospital was a teaching facility and that unlicensed residents and interns would provide unsupervised treatment. Although the trial court granted a directed verdict in favor of the individual defendants on the informed consent count at trial, arguably plaintiff could have made out a consent claim against the hospital based on the hospital's status. Such a claim, however, could only succeed if plaintiff alleged that the failure to provide this information was beneath the standard of practice in the community. *Marchlewicz v Stanton,* 50 Mich App 344, 349-350; 213 NW2d 317 (1973). Plaintiff did not so allege.

Counts II and III sounded in negligence and malpractice, respectively, and were identical. Our examination of these allegations reveals that the hospital's alleged negligence derived solely from

the acts of the individual doctors. Even the supervisory acts of the hospital were raised against individuals. An argument that the hospital might have been negligent for its lack of proper procedures is unpersuasive here, where the jury determined that the unsupervised individuals were not negligent. The hospital cannot be liable on a *respondeat superior* theory if the persons having primary responsibility were not liable. *Ravenis v Detroit General Hospital,* 63 Mich App 79, 83-84; 234 NW2d 411 (1975). *Lamb v Oakwood Hospital Corp,* 41 Mich App 287; 200 NW2d 88 (1972).

Having pled nothing of substance against the hospital that she did not try and lose against the doctors, the question becomes whether plaintiff may relitigate the doctors' alleged acts of negligence against the hospital in a retrial. We believe that on the basis of collateral estoppel she may not.

An issue of fact determined in a trial between the parties may be relitigated against a party erroneously dismissed from the suit if there is no mutuality between him and the party to the first trial. *Belin v Jax Kar Wash No 5, Inc,* 95 Mich App 415; 291 NW2d 61 (1980). This is predicated upon the general rule that collateral estoppel does not apply in the absence of mutuality. *Howell v Vito's Trucking and Excavating Co,* 386 Mich 37; 191 NW2d 313 (1971). Mutuality exists if there is a "substantial identity" between the parties to the two adjudications. *Senior Accountants, Analysts and Appraisers Ass'n v Detroit,* 60 Mich App 606, 611; 231 NW2d 479 (1975), *aff'd* 399 Mich 449; 249 NW2d 121 (1976), *Local 98 v Flamegas Detroit Corp,* 52 Mich App 297, 302-304; 217 NW2d 131 (1974). Well-recognized exceptions to the mutuality rule, however, exist in the defensive assertion of

collateral estoppel where there is a relationship of master-servant, principal-agent, or indemnitor-in-demnitee. *Darin & Armstrong v Ben Agree Co,* 88 Mich App 128, 134; 276 NW2d 869 (1979), *Braxton v Litchalk,* 55 Mich App 708, 721; 223 NW2d 316 (1974), *DePolo v Greig,* 338 Mich 703, 710-712; 62 NW2d 441 (1954). The reasoning employed in *De-Polo* is exactly the same as that urged here: there is no reason to litigate against the corporation when its agents have been exonerated by a jury. The relationship between the hospital and the doctors in the instant case is that of principal-agent as the hospital is liable for the independent contracting physicians on a theory of agency by estoppel. *Grewe v Mount Clemens General Hospital,* 404 Mich 240; 273 NW2d 429 (1978).

Although the trial court granted defendant hospital's motion for accelerated judgment under the then existing law, remand for a new trial against the hospital is unwarranted here since it would involve relitigation of the same facts.

Plaintiff's remaining allegations of error are without merit.

The testimony of Dr. Stephen Preston, a defense expert, as to deletions from the *Physician's Desk Reference* of cautions concerning the drug pitocin was proper. This testimony referring to the *Physician's Desk Reference* was admissible for impeachment since plaintiff's expert had indicated that the standard of care for the use of pitocin would have been to heed the cautions about the drug in the literature. A learned treatise may be used for impeachment. MRE 707. *Stanek v Bergeon,* 89 Mich App 283, 286; 279 NW2d 296 (1979).

Since medical judgment was very much at issue in the instant case, the jury instruction given as to this point was legally accurate and plainly applied to the facts.

Nor do we find that the trial court erred in refusing to give plaintiff's theory of the case where the court requested that plaintiff shorten her version of the theory, plaintiff refused to do so, and the court gave a shortened version of the theory authored by defendants. A comparison of the requested instruction with the one actually given shows the court to have complied with GCR 1963, 516.7. The court may give its own theory if it presents the "material substance" of the issues, which means the legal principles and the factual propositions supporting the party's position. *Moore v B & C Family Center, Inc,* 85 Mich App 600; 272 NW2d 150 (1978). The theory of the case given by the trial court complied with this standard.

Finally, plaintiff contends that the trial court improperly refused to instruct the jury according to plaintiff's supplemental instruction that a finding of negligence of any act before the operation would result in a finding for plaintiff even if the operation had been skillfully performed.

A trial court is required to include applicable supplemental instructions that fairly state the law. *Richman v City of Berkley,* 84 Mich App 258; 269 NW2d 555 (1978). A trial court commits no error, however, if its own wording of nonstandard instructions conveys the substance. *Schattilly v Yonker,* 347 Mich 660, 665; 81 NW2d 343 (1957). *Gibbs v Guild,* 332 Mich 671, 677; 52 NW2d 542 (1952). The decision whether to use a requested supplemental instruction rests within the discretion of the trial court. *Tomei v Bloom Associates, Inc,* 75 Mich App 661, 668; 255 NW2d 727 (1977). Judicial discretion was not abused here, where the trial court properly refused to read a requested instruction which it considered confusing. According to the court, confusion would arise from the

fact that the instruction did not indicate the liabil-. ity of each party if the jury were to find only a particular act to be negligent. The court expressed concern that the requested instruction might lead, for example, to the jury's finding Dr. Talmage liable when only the use of pitocin was negligent. See *Nowicki v Suddeth,* 7 Mich App 503, 512; 152 NW2d 33 (1967). The court did correctly instruct the jury that there may be more than one proximate cause and that a proximate cause need not be the last cause.

Affirmed.