FLETCHER v FORD MOTOR COMPANY

Docket No. 58134. Submitted April 6, 1983, at Detroit.—Decided
September 26, 1983. Leave to appeal applied for.

Ruby Fletcher was injured when a power press malfunctioned.
The dies used on the press were supplied to Fletcher's employer
by the Ford Motor Company and did not include protective
guards. Fletcher brought an action against Ford, alleging negli-
gence and breach of warranty. The Wayne Circuit Court,
William J. Giovan, J., entered a judgment on a jury verdict in
favor of defendant. Plaintiff appealed, alleging that the trial
court erred by excluding certain publications from evidence, by
refusing to instruct the jury on the duty of one who supplies
chattels to another for the supplier's business purposes and by
refusing to instruct the jury that an industry may not set as its
own standard of care conduct that is less than reasonable.
*Held:*

1. The three publications which were excluded do not repre-
sent accepted industry standards and therefore are within the
scope of Rule 707 of the Rules of Evidence, governing the
admission of learned treatises. Although the rule allows admis-
sion of such treatises only for impeachment, a recent Supreme
Court decision expands the scope of admissibility to nonhearsay
purposes. Under this analysis, the documents should have been
admitted. Their exclusion was harmless, however, because sub-
stantial other evidence was presented relating to defendant's
alleged knowledge of safety standards and feasibility of institut-
ing safety procedures.

2. The evidence presented did not support the plaintiff's

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 29 Am Jur 2d, Evidence §§ 888, 891.

31 Am Jur 2d, Expert and Opinion Evidence §§ 66-68.

Admissibility in evidence, on issue of negligence, of codes or stan-
dards of safety issued or sponsored by governmental body or by
voluntary association. 58 ALR3d 148.

Use of medical or other scientific treatises in cross-examination of
expert witness. 60 ALR2d 77.

[3] 57 Am Jur 2d, Negligence § 54 *et seq.*

[4] 75 Am Jur 2d, Trial § 576.

requested instruction regarding a supplier's duties toward third parties.

3. The requested industry standards instruction was properly refused as the instructions given fully and properly advised the jury on the law.

Affirmed.

1. EVIDENCE — LEARNED TREATISES — SAFETY STANDARDS.

Publications which contain recommendations and alternative safety ideas, rather than accepted industry-wide safety standards, are not directly admissible into evidence under the statute allowing evidence of accepted industry standards; such publications are within the scope of the rule of evidence which allows their admission for impeachment purposes (MCL 600.2946; MSA 27A.2946; MRE 707).

2. EVIDENCE — LEARNED TREATISES — HEARSAY — IMPEACHMENT.

Learned treatises discussing the safety of a product are admissible in a products liability plaintiff's case in chief for a nonhearsay purpose, such as to raise a presumption of notice, as well as for the purpose of impeachment (MRE 707).

3. NEGLIGENCE — NEGLIGENT ENTRUSTMENT — KNOWLEDGE.

A plaintiff, in order to sustain a cause of action for negligent entrustment of a chattel to a third party, must prove that the defendant knew or should have known of the receiving party's propensity for taking unreasonable risks of injury.

4. TRIAL — JURY INSTRUCTIONS — REQUESTED JURY INSTRUCTIONS.

A trial court is not required to give a party's requested jury instruction if the instructions which are given fully and properly instruct the jury on the law.

*Philo, Atkinson, Steinberg, Walker & White* (by *Ronald L. Walker*), for plaintiff.

*Dickinson, Wright, Moon, Van Dusen & Freeman* (by *John E. S. Scott, Richard Glaser* and *Curtis B. Blessing*), for defendant.

Before: WAHLS, P.J., and GRIBBS and M. WARSHAWSKY,* JJ.

* Circuit judge, sitting on the Court of Appeals by assignment.

GRIBBS, J. The plaintiff, Ruby Fletcher, appeals from a judgment for the defendant, Ford Motor Company, in a products liability action. Fletcher worked for the Budd Company, which produced automobile parts for Ford. The dies to produce the parts were supplied by Ford and did not include protective guards to prevent a press operator's hands from being crushed between the dies. Fletcher was using a press which required two-hand operation. Theoretically, if one hand was removed from a palm button, the press ram would stop. Fletcher reached into the die space to remove a part which had failed to properly eject (by a forced air system). While reaching in, the press inadvertently continued a stroke, crushing Fletcher's arm between the dies.

Fletcher sued Ford because of its unguarded dies, alleging negligence and breach of warranty. The jury returned a verdict for the defendant, and the trial court denied the plaintiff's motion for a new trial. The plaintiff now appeals, raising three issues. She argues that the court erred by excluding three recommended safety codes from evidence under MRE 707 (learned treatises), by refusing to instruct the jury on the duty of one who supplies chattels to another to use for the supplier's business purposes, and by refusing to instruct that an industry may not set as its own standard of care conduct that is less than reasonable.

## I. MRE 707

The plaintiff first argues that the trial court erred by refusing to allow into evidence three documents, claiming they should not be excluded under MRE 707 because they are not learned treatises. The documents are the *Accident Prevention Manual for Industrial Operations* (5th ed,

1964), *Power Press Safety Manual* (1958), and *Guards Illustrated* (1962), all publications by the National Safety Council (NSC). A fourth publication, the American Standards Association's (ASA) *Safety Code for Power Presses* (ASA B 11.1-1960, 1960 ed), was admitted into evidence.

A. *Safety Publications as "Learned Treatises"*

The trial court ruled that the three National Safety Council publications were inadmissible under MRE 707. We agree with the trial court's initial determination that these documents are included within the scope of rule 707. Rule 707 states:

"To the extent called to the attention of an expert witness upon cross-examination or relied upon by him in direct examination, statements contained in published treatises, periodicals, or pamphlets on a subject of history, medicine, or other science or art, established as a reliable authority by the testimony or admission of the witness or by other expert testimony or by judicial notice, are admissible for impeachment purposes only."

We first reject the plaintiff's contention that the three publications are comparable to the American Standards Association publication from an evidentiary standpoint. The ASA book was admissible as evidence of an accepted nongovernmental industry safety standard. See MCL 600.2946; MSA 27A.2946. The NSC publications, however, do not fall within the scope of the "industry standards" statute because they do not represent accepted industry-wide standards. Instead, they are—as the publications state in their introductions—non-binding recommendations and alternative safety ideas.

We also find unpersuasive the plaintiff's citation of *Coger v Mackinaw Products Co*, 48 Mich App 113, 124-125; 210 NW2d 124 (1973), and *Thompson*

*v Essex Wire Co,* 27 Mich App 516, 534-535; 183
NW2d 818 (1970). Those pre-MRE cases discussed
the foundation requirements of having an expert
witness available to testify and be cross-examined
about a treatise; they do not discuss the scope of
what is now MRE 707.

The plaintiff has attempted to distinguish
"learned treatises" from safety publications
drafted by voluntary safety organizations. See *Mc-
Comish v DeSoi,* 42 NJ 274; 200 A2d 116, 120-121
(1964).[1] We do not believe the evidentiary rule
establishes such a distinction. The rule covers
"published treatises, periodicals, or pamphlets on a
subject of history, medicine, or other science or
art".[2] MRE 707. This is broad enough to include
the National Safety Council publications. *Cf. Mis-
sissippi Power & Light Co v Whitescarver,* 68 F2d
928, 930 (CA 5, 1934). The rule is not—as the
plaintiff implies—applicable only to medical texts.

## B. *Use of Learned Treatises*

Under its terms, MRE 707 restricts the use of
learned treatises to *impeachment purposes only.*
This eliminates all other possible nonhearsay pur-
poses, including to show knowledge. More than a
modification of its federal rules counterpart, FRE
803(18),[3] this would make the use of learned trea-

---

[1] In *McComish,* the safety code involved was generally recognized
and accepted in the construction industry. Thus, as was demonstrated
earlier, the plaintiff is attempting to compare statutorily admissible
industry standards with nonrecognized standards.

[2] These are commonly called "learned treatises" and we will also
use that term as a general description.

[3] Federal Rule 803(18) provides:

"The following are not excluded by the hearsay rule, even though
the declarant is available as a witness:

\* \* \*

"(18) Learned treatises. To the extent called to the attention of an
expert witness upon cross-examination or relied upon by him in direct
examination, statements contained in published treatises, periodicals,

tises more restricted than it would be had MRE 707 never been adopted because rule 707 is not exclusive in nature; it is inclusive. It does not exclude learned treatises for only hearsay purposes; it goes beyond this and allows their use for only one form of nonhearsay purposes, the impeachment purpose. *Slocum v Ford Motor Co,* 111 Mich App 127, 139; 314 NW2d 546 (1981), *lv den* 414 Mich 886 (1982); *Sponenburgh v Wayne County,* 106 Mich App 628, 641-645; 308 NW2d 589 (1981); *Ellison v Wayne County General Hospital,* 100 Mich App 739, 746; 300 NW2d 392 (1980), *lv den* 411 Mich 988 (1981); *Stachowiak v Subczynski,* 93 Mich App 245; 287 NW2d 194 (1979), *rev'd* 411 Mich 459; 307 NW2d 677 (1981); *Stanek v Bergeon,* 89 Mich App 283, 286; 279 NW2d 296 (1979). This analytical approach was rejected, however, by the Michigan Supreme Court in *Stachowiak v Subczynski,* 411 Mich 459; 307 NW2d 677 (1981).

In *Stachowiak,* a medical malpractice case, the defense used enlarged charts from medical textbooks to illustrate the defendant's testimony that he had relied on available information in designing a course of treatment for the plaintiff patient. The defense did not seek to admit the charts for the substantive purpose of proving their accuracy; clearly, a nonhearsay purpose was intended. The trial court allowed the charts (with some modifications). The Court of Appeals reversed, holding that the charts were not used for impeachment purposes and thus were inadmissible under MRE 707.

or pamphlets on a subject of history, medicine, or other science or art, established as a reliable authority by the testimony or admission of the witness or by other expert testimony or by judicial notice. If admitted, the statements may be read into evidence but may not be received as exhibits."

When originally proposed, the Michigan rule was identical to the federal rule. See MRE 803—Original Proposal, Michigan Court Rules Annotated, Evidence Rules, p 673 (1979).

The Supreme Court upheld the trial court and implicitly determined that MRE 707 posed no obstacle to admissibility of the charts. Although the Supreme Court recognized that the charts were not proposed for a hearsay purpose (and, thus, MRE 801[c] and 802 would not bar admission), the Court failed to note that MRE 707 is not phrased in hearsay/nonhearsay terms. Despite being "nonhearsay", evidence may still be prohibited by another rule, as the *Stachowiak* Court recognized by addressing the probative/prejudicial balance of MRE 403. By its decision, the Court in effect has rewritten rule 707, changing the phrase "for impeachment purposes only" to "for impeachment and nonhearsay purposes".

The *Stachowiak* opinion appears to alter the meaning of MRE 707 quite appropriately since rule 707, as drafted, is unduly restrictive. For example, a manufacturer in a products liability action is "held to the knowledge of an expert and is presumed to know of scientific studies and articles concerning the safety of its products". *Dunn v Lederle Laboratories,* 121 Mich App 73, 79-80; 328 NW2d 576 (1982). Learned treatises discussing the safety of a product should thus be admissible in the plaintiff's case in chief to raise a presumption of notice. This is a nonhearsay purpose—so MRE 802 would pose no bar to admissibility—but it is not an impeachment purpose. Rule 707 as drafted would prevent the use of relevant and important evidence of knowledge. The Supreme Court's interpretation in *Stachowiak,* however, avoids this prohibitive result and promotes a reasonable use of learned treatises.

Applying the *Stachowiak* result to our facts, the three documents would be admissible if they were introduced for a nonhearsay purpose. We have

examined the transcript, and it clearly reveals that the plaintiff sought to introduce the documents to show Ford's knowledge of the need for safety guards on dies and the feasibility of such a design. These are nonhearsay purposes, and thus the court erred in disallowing them under MRE 707.

## C. *Harmless Error*

Although the court's ruling was erroneous, we conclude that the error was harmless. GCR 1963, 529.1. The plaintiff successfully used two other pieces of evidence to show knowledge and feasibility. The first was the American Standards Association's *Safety Code for Power Presses.* This was admitted as substantive evidence of an industry safety standard, MCL 600.2946; MSA 27A.2946, whereas the three publications involved here showed only suggested standards.[4] The second source of evidence was the testimony of the plaintiff's expert witness, who ably testified about the promulgation of standards, the basics and specifics of die and power press safety, and the extent of industry knowledge in 1968 when the Ford dies were produced. The National Safety Council publications were intended to support the expert's testimony, but they would have added no more—qualitatively—than did the American Standards Association book. The plaintiff was therefore able to put substantial evidence of knowledge and feasibility before the jury; her inability to add quantitatively to this evidence was harmless.[5]

[4] It was brought out on cross-examination of the plaintiff's expert that the section of the American Standards Association publication relied upon by the plaintiff was actually a suggested, and not mandatory, standard for guarding dies. Thus, although the publication was admitted as substantive evidence, its appropriateness as a true industry standard is questionable.

[5] The defendant has argued that the three publications would have

## II. SUPPLIER OF CHATTELS INSTRUCTION

The plaintiff next argues that the trial court erred by refusing to instruct the jury on §§ 392 and 393 of 2 Restatement Torts, 2d.[6]

The court gave the standard jury instructions on the plaintiff's theory of negligence (SJI 10.01-10.03, 10.05, 15.01-15.03, 15.05), negligent design (SJI 25.31, 25.32), and breach of implied warranty (SJI 25.01, 25.02, 25.21, 25.22) and an instruction on negligent entrustment from 2 Restatement Torts, 2d, § 390. We have reviewed the instructions as a whole and conclude that the instructions requested would be redundant to the other instructions and would run afoul of the Supreme Court's opinion in *Fredericks v General Motors Corp*, 411 Mich 712; 311 NW2d 725 (1981). In *Fredericks* the Court determined that a party, to sustain a claim of negligent entrustment, must show that the sup-

been cumulative to the other evidence and would be properly excludable under MRE 403. Because the trial court ruled those publications inadmissible *ab initio* under MRE 707, it did not address this issue. We are unable, then, to review the trial court's action on this point. In light of our affirmance, there is also no need to. Our decision is limited to the "harmless" aspect of the error, and does not involve the merits of Ford's MRE 403 claim.

[6] Section 392 states:

"One who supplies to another, directly or through a third person, a chattel to be used for the supplier's business purposes is subject to liability to those for whose use the chattel is supplied, or to those whom he should expect to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by persons for whose use the chattel is supplied

"(a) if the supplier fails to exercise reasonable care to make the chattel safe for the use for which it is supplied, or

"(b) if he fails to exercise reasonable care to discover its dangerous condition or character, and to inform those whom he should expect to use it."

Section 393 states:

"One who supplies through a third person a chattel to be used for the supplier's business purpose is subject to liability under the rules stated in §§ 391 and 392 although the dangerous character or condition of the chattel is discoverable by an inspection which the third person is under a duty to the person injured to make."

plier knew or should have known of the receiving party's propensity to take unreasonable risks of injury. 411 Mich 719. The evidence presented does not support this instuction. For these reasons, the court did not err in refusing to give the requested instructions.

### III. Industry Standards Instruction

Finally, the plaintiff argues that the court erred in refusing to instruct as follows:

"In your deliberations you may take into account what the defendant was doing or not doing and what the industry was doing or not doing. An industry, however, may not set its own standard to be judged by, if that standard is less than reasonable prudence. While in many instances common prudence is reasonable prudence, a whole industry may have lagged in the development of the safety of its products. You are the judges of what was or was not reasonable prudence on the part of the defendant."

The trial court refused to give the instruction because it felt that the standard jury instruction concerning the definition of negligence was sufficient and that the instruction requested was argumentative. The trial court's instructions regarding the definition of ordinary care were extensive.

The court fully and properly instructed the jury on the law despite its refusal to give the requested instruction. We therefore find no reversible error. See *Coon v Williams,* 4 Mich App 325, 338; 144 NW2d 821 (1966).

### Conclusion

The trial court committed harmless error when

it disallowed three National Safety Council publications under MRE 707. They were offered for a nonhearsay purpose, an apparent exception to rule 707 as interpreted by the Supreme Court in *Stachowiak,* and should have been admitted. The error was harmless, though, because other evidence was allowed to show knowledge of the need for guarding dies and the feasibility of such design.

When read in their entirety, the jury instructions were correct and complete. No error resulted from the court's refusal to give additional instructions requested by the plaintiff.

The judgment is affirmed.