FRANCISCO v MANSON, JACKSON & KANE, INC

Docket No. 73393. Submitted November 13, 1984, at Lansing.—Decided July 22, 1985. Leave to appeal denied, 424 Mich 872.

Plaintiff, Gerald L. Francisco, personal representative of the estate of Todd G. Francisco, deceased, brought an action in the Genesee Circuit Court alleging architectural malpractice by the defendant, Manson, Jackson & Kane, Inc., in the design of a swimming facility at the Kuehn-Haven Middle School in Montrose, Michigan. The deceased died as a result of injuries suffered in a fall from a three-meter diving stand at the school. The jury returned a verdict for the plaintiff and plaintiff's damages were assessed at $980,328, but were reduced by 15% to reflect comparative negligence. The trial court, Donald R. Freeman, J., entered a judgment for the plaintiff for $788,278.80 plus interest. The defendant appeals from the judgment. *Held:*

1. Any error in the admission of evidence concerning certain

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] Am Jur 2d, Evidence §§ 887, 890.

Worker's compensation: use of medical books or treatises as independent evidence. 17 ALR3d 993.

[3] Am Jur 2d, Expert and Opinion Evidence § 19.

Competency of general practitioner to testify as expert witness in action against specialist for medical malpractice. 31 ALR3d 1163.

[4] Am Jur 2d, Appeal and Error §§ 545 *et seq.*

See the annotations in the ALR3d/4th Quick Index under Appeal and Error.

[5, 6, 7, 9] Am Jur 2d, Architects §§ 23-25.

Architect's liability for personal injury or death allegedly caused by improper or defective plans or design. 97 ALR3d 455.

[6] Am Jur 2d, Architects § 8.

[8] Am Jur 2d, Negligence §§ 199-205.

Liability of telephone company for injury resulting from condition or location of telephone booth. 17 ALR4th 1308.

[10] Am Jur 2d, Remittitur §§ 366, 367.

Plaintiff's right to appeal adverse judgment on one cause action as affected by acceptance remittitur of another cause of action. 41 ALR Fed 856.

safety standards for diving stands promulgated by the Council for National Cooperation in Aquatics was harmless.

2. No manifest injustice is presented in regard to the defendant's complaint that an expert witness called by plaintiff was permitted to use the pronoun "I" in discussing the applicable standard of care. Defendant did not object thereto at trial.

3. Defendant's argument that plaintiff failed to produce expert testimony to establish a breach of the applicable standard of care was deemed to be without merit.

4. No error was presented in regard to the defendant's argument that plaintiff failed to establish a prima facie case by failing to produce sufficient evidence of alternatives to the diving board and stand selected by the defendant.

5. An architect's duty of care is owed to any person lawfully on the premises; privity of contract is not required.

6. The risk at issue here was not simply open and obvious danger of a fall from the diving board or stand, but, rather, the risk of using one particular type of board and stand rather than various alternatives. The latter risk was not open and obvious and the Court of Appeals, on the record, characterized the risk of using the board and stand at issue as unreasonable in light of the foreseeable injuries.

7. The trial court did not err by declining to direct a verdict for defendant on the issue of whether defendant should be relieved from liability due to intervening negligence by the school district. The school district's failure to disregard defendant's advice regarding the selection of an appropriate diving board and stand could not constitute intervening negligence sufficient to relieve defendant from liability under the circumstances presented.

8. No error occurred in regard to the jury instructions on vicarious liability or compliance with governmental and industrial standards.

9. The valuation placed by the jury on the decedent's life was not so excessive as to shock the judicial conscience of the Court of Appeals.

Affirmed.

1. EVIDENCE — LEARNED TREATISES — SAFETY PUBLICATIONS.

The use of learned treatises in a trial ordinarily is limited to impeachment; the admissibility of safety publications drafted by safety organizations is governed by rules applicable to learned treatises.

2. EVIDENCE — LEARNED TREATISES — PROFESSIONAL LITERATURE.

Learned treatises and other professional literature are admissible

for any nonhearsay purpose where the trial court determines in the exercise of its sound discretion that their probative value is not substantially outweighed by their prejudicial effect.

3. EVIDENCE — EXPERT TESTIMONY — MALPRACTICE.

Expert testimony in a malpractice case should be based on how a reasonable similarly-situated practitioner would act, not on how the witness himself would act.

4. APPEAL — PRESERVING QUESTION.

An appellate court will not afford relief to a party in regard to the unobjected-to admission of certain testimony at trial absent manifest injustice.

5. TORTS — ARCHITECTURAL MALPRACTICE — LEGAL DUTY.

The existence of a legal duty in an architectural malpractice action is a question of law for resolution by the court.

6. TORTS — ARCHITECTURAL MALPRACTICE — DUTY OF CARE — PRIVITY OF CONTRACT.

An architect owes a duty of care similar to that owed by other professionals like attorneys and physicians; the duty of the architect is owed to any person lawfully on the premises and privity of contract is not required.

7. TORTS — ARCHITECTURAL MALPRACTICE — UNREASONABLE DANGEROUS RISKS — FORESEEABLE INJURIES — STANDARD OF CARE.

The test in an architectural malpractice action for determining whether an architect's advice on the selection of a certain diving board and stand, rather than various alternatives, for a specific middle school's swimming pool was unreasonably dangerous is whether the risk of using the board and stand at issue may be characterized as unreasonable in light of the foreseeable injuries.

8. NEGLIGENCE — INTERVENING ACT — PROXIMATE CAUSE — JURY QUESTION — FORESEEABLE INTERVENING NEGLIGENCE.

The question of whether an intervening negligent act of a third party constitutes a superseding proximate cause so as to relieve the defendant from liability is ordinarily a question of fact for the jury; intervening negligence by a third party will not relieve the defendant from liability if the intervening event was foreseeable.

9. EVIDENCE — ARCHITECTURAL MALPRACTICE — GOVERNMENTAL AND INDUSTRIAL STANDARDS.

Evidence of compliance with governmental and industrial stan-

dards by an architect does not necessarily prevent a finding of negligence in an action for architectural malpractice.

10. JUDGMENTS — *REMITTITUR.*

*Remittitur* can be ordered in an action where there are no other errors at trial only if the verdict was so excessive as to shock the judicial conscience.

*Pelavin, Pelavin & Powers, P.C.* (by *Michael A. Pelavin* and *Frumeth Brenda Hirsh*), and *J. Dallas Winegarden, P.C.* (by *J. Dallas Winegarden, Jr.,*), for plaintiff.

*Martin, Bacon & Martin, P.C.* (by *James N. Martin, John W. Crimando,* and *Robert Patrick George*), for defendant.

Before: WAHLS, P.J., and R. M. MAHER and R. E. NOBLE,* JJ.

PER CURIAN. Plaintiff's ten-year-old son, Todd Gerald Francisco, died as the result of injuries suffered in a fall from a three-meter diving stand at the Kuehn-Haven Middle School in Montrose, Michigan. Defendant was the architectural firm that designed the swimming facility at the school. In this action for architectural malpractice, a verdict for plaintiff was returned after a jury trial. Plaintiff's damages were assessed at $980,328, but were reduced by 15% to reflect comparative negligence. A judgment was entered for plaintiff for $788,278.80 plus interest, and defendant appeals as of right.

Defendant argues that the trial court erred by permitting an expert witness called by plaintiff, Dr. M. A. Gabrielson, to read from certain safety standards for diving stands promulgated by the Council for National Cooperation in Aquatics. The witness was the chairman of the committee of the

---

* Circuit judge, sitting on the Court of Appeals by assignment.

council which formulated the standards at issue, and he prepared the first draft of the standards himself.

Ordinarily, use of learned treatises is limited to impeachment. *Bivens v Detroit Osteopathic Hospital,* 403 Mich 820; 282 NW2d 926 (1978), *rev'g* 77 Mich App 478; 258 NW2d 527 (1977). The admissibility of safety publications drafted by safety organizations is governed by the rules applicable to learned treatises. *Fletcher v Ford Motor Co,* 128 Mich App 823, 826-827; 342 NW2d 285 (1983). In *Stachowiak v Subczynski,* 411 Mich 459, 463-465; 307 NW2d 677 (1981), the Court held that learned treatises and other professional literature were admissible for any nonhearsay purpose if the trial court determined in the exercise of its sound discretion that their probative value was not substantially outweighed by their prejudicial effect. See also *Fletcher v Ford Motor Co, supra,* pp 828-829.

The witness here was one of the authors of the standards and was available for cross-examination. One of the theories advanced by defendant at trial was that it had acted in compliance with applicable nongovernmental safety standards and was therefore not negligent. Plaintiff could have introduced the safety standards at issue here to rebut this theory; any error, therefore, involved not whether evidence of the safety standards should have been admitted at all, but whether the evidence should have been saved for a rebuttal rather than introduced in plaintiff's case in chief. Any error in admitting this evidence was harmless.

Defendant also complains that an expert witness called by plaintiff, Ronald Reno, was permitted to use the pronoun "I" in discussing the applicable standard of care. Expert testimony in a malpractice case should be based on how a reasonable similarly-situated practitioner would act, not on

how the witness himself would act. See *Rytkonen v Lojacono,* 269 Mich 270, 274; 257 NW 703 (1934), and *Carbonell v Bluhm,* 114 Mich App 216, 224; 318 NW2d 659 (1982). Defendant, however, made no objection to the admission of this testimony at trial, and under such circumstances an appellate court will not afford the defendant any relief absent manifest injustice. See, for example, *Deeb v Berri,* 118 Mich App 556, 562; 325 NW2d 493 (1982). Examination of the testimony of this witness in context shows that, despite the occasional use of the pronoun "I", the witness was testifying as to the applicable standard of care, not merely his personal practices. No manifest injustice is presented.

Defendant also argues that plaintiff failed to produce expert testimony to establish a breach of the applicable standard of care. This argument, however, is without merit, because it is premised on the erroneous assumption that Ronald Reno gave no admissible testimony concerning the applicable standard of care. The record shows that, even if testimony by Reno containing the pronoun "I" is disregarded, Reno's testimony supports an inference that the applicable standard of care was breached.

Defendant points to *Owens v Allis-Chalmers Corp,* 414 Mich 413, 429-431; 326 NW2d 372 (1982), and argues that plaintiff failed to establish a prima facie case by failing to produce sufficient evidence of alternatives to the diving board and stand selected by defendant. In *Owens,* the Court held that plaintiff had failed to present a prima facie case showing that the design of a forklift was unreasonably dangerous in light of the foreseeable risk because the plaintiff presented no evidence concerning the magnitude of the risk involved and

the reasonableness of the proposed alternative designs. Application of *Owens* to this case is unwarranted because this case involves architectural malpractice, while *Owens* was a products liability case. Moreover, plaintiff produced evidence satisfying the requirements of *Owens*. Plaintiff's expert, Dr. Gabrielson, explained that a 3-meter board and stand like that at issue here was an unacceptable risk for use in a facility where middle-school-aged children engaged in recreational swimming. Dr. Gabrielson pointed to various feasible design changes that would have increased the safety of the board and stand, including adding a bed under the springboard, changing the diameter and position of the guardrails, changing the materials of which the guardrails were made to a less slippery material, changing the height and rise of the steps, and adding a plexiglass or canvas enclosure at the top of the board. No error in this connection is presented.

Defendant argues that it owed no duty to the school district running to the benefit of plaintiff's decedent to warn of the risks involved in the use of the diving board and stand. The existence of the legal duty is a question of law for resolution by the court. *Moning v Alfono,* 400 Mich 425, 436-437; 254 NW2d 759 (1977). An architect owes a duty of care similar to that owed by other professionals like attorneys or physicians. *Ambassador Baptist Church v Seabreeze Heating & Cooling Co,* 28 Mich App 424, 426; 184 NW2d 568 (1970). The duty of the architect is owed to any person lawfully on the premises; privity of contract is not required. *Estate of Clark,* 33 Mich App 395, 401; 190 NW2d 373 (1971). *rev'd on other grounds sub nom Smith v Detroit* 388 Mich 637; 202 NW2d 300 (1972). See also Anno: *Architect's Liability for Personal Injury of Death Allegedly Caused by*

*Improper or Defective Plans or Design,* 97 ALR3d 455.

Defendant argues that the danger of a fall from the diving board or stand was open and obvious and that it therefore had no duty to warn of such danger. This argument really relates to the applicable standard of care rather than to the existence of a legal duty. See *Moning v Alfono, supra,* pp 437-438. In the products liability case of *Owens v Allis-Chalmers Corp, supra,* p 425, the Court explained that the obviousness of the risks that inhere in some simple tools or products is a factor contributing to a conclusion that such tools or products are not unreasonably dangerous, but that the test is not whether the risks were obvious, but whether they were unreasonable in light of the foreseeable injuries.

Defendant's argument fails to focus on the precise theory of liability advanced by plaintiff. Plaintiff claimed, and evidence introduced by the parties showed, that the diving board and stand at issue were appropriate for use in high-level competitive diving but were unreasonably dangerous when used for recreational swimming by middle-school-aged children. Defendant knew that the board and stand would be installed in a middle school pool and that the pool's intended uses included recreational swimming. Defendant did not warn of a potential danger and did not inquire into any possible alternate less dangerous designs.

The risk at issue was not simply open and obvious danger of a fall from the diving board or stand, but, rather, the risk of using one particular type of board and stand rather than various alternatives. The latter risk was not open and obvious and, on this record, we have no hesitation in characterizing the risk of using the board and

stand at issue as unreasonable in light of the foreseeable injuries.

Defendant's reliance on *Antcliff v State Employees Credit Union,* 414 Mich 624; 327 NW2d 814 (1982), is misplaced. In *Antcliff,* the Court held that a scaffold manufacturer did not breach the applicable standard of care by failing to provide instructions on use of the scaffold. The Court noted that the manufacturer designed his product for use by professionals who, the manufacturer could presume, had mastered basic operations involving use of the product. 414 Mich 640. Defendant here was not a manufacturer selling to professionals, but instead was a professional dealing with non-professionals who hired defendant to advise them about the very matter at issue.

Defendant also argues that it should be relieved from liability due to intervening negligence by the school district. Whether an intervening negligent act of a third party constitutes a superseding proximate cause so as to relieve the defendant from liability is ordinarily a question of fact for the jury. See, for example, *Young v E W Bliss Co,* 130 Mich App 363, 369; 343 NW2d 553 (1983). Intervening negligence by a third party will not relieve the defendant from liability if the intervening event was foreseeable. *Davis v Lhim,* 124 Mich App 291, 307; 335 NW2d 481 (1983); *Gorelick v Dep't of State Highways,* 127 Mich App 324, 334; 339 NW2d 635 (1983).

Defendant was retained as a professional architect to advise the school district about matters including the selection of an appropriate diving board and stand. It was highly foreseeable that the school district would follow defendant's advice under the circumstances, and we cannot see how the district's failure to disregard defendant's advice could constitute intervening negligence suffi-

cient to relieve defendant from liability under these circumstance. The trial court did not err by declining to direct a verdict for defendant on this issue.

Defendant argues that the trial court erred by declining to give a requested instruction on vicarious liability. The trial court instructed the jury that defendant could not be liable except for negligence by defendant's employee, Herbert Iverson, at the time and during the course of his employment. Defendant has failed to explain why it claims this instruction was inadequate to convey the applicable legal concepts to the jury. No error in this connection is presented.

Defendant also argues that the trial court erred by declinging to instruct the jury that it could consider compliance with governmental and industrial standards in determining whether defendant was negligent. Compliance with governmental and industrial standards does not necessarily prevent a finding of negligence. *Owens v Allis-Chalmers Corp, supra,* p 422. Extensive evidence and argument was presented here concerning compliance with governmental and industrial standards; nothing at trial could have suggested that the jury could not consider compliance with governmental and industrial standards. Defendant's requested instructions contained misleading language focusing on the manufacture and design of the diving board and stand rather than on whether the board and stand were appropriate for use under the circumstances. No error in this connection is presented.

Defendant argues that the damages awarded were excessive and that the trial court committed an abuse of discretion by denying its motion for a new trial or *remittitur.* Where there are no other

errors at trial, *remittitur* can be ordered only if the verdict was so excessive as to shock the judicial conscience. *Burnett v Mackworth G Rees, Inc,* 109 Mich App 547, 552; 311 NW2d 417 (1981); *May v Grosse Pointe Park,* 122 Mich App 295, 297; 332 NW2d 411 (1982). We cannot say that the valuation placed by the jury here on the life of a child was so excessive as to shock our consciences.

Affirmed.