# STATE OF MICHIGAN

# COURT OF APPEALS

---

JAMES WHITE, Personal Representative of the
Estate of BOBBIE JEAN WILSON-WHITE,

        Plaintiff-Appellant,

v

ST. JOHN MACOMB HOSPITAL,
DIAGNOSTIC RADIOLOGY CONSULTANTS,
P.C., PHILIP A. ADLER, M.D., and AARON
SMITH, D.O.,

        Defendants,

and

TRI-COUNTY UROLOGISTS, P.C., and
GREGORY V. MCINTOSH, D.O.,

        Defendants-Appellees.

UNPUBLISHED
February 19, 2015

No. 316751
Macomb Circuit Court
LC No. 2011-004467-NH

---

Before: CAVANAGH, P.J., and JANSEN and RONAYNE KRAUSE, JJ.

PER CURIAM.

In this medical-malpractice case, plaintiff appeals by right the circuit court's grant of summary disposition in favor of defendants Tri-County Urologists, P.C. ("Tri-County") and Gregory V. McIntosh, D.O. ("McIntosh") (collectively "defendants").[1] We reverse and remand for further proceedings consistent with this opinion.

On April 27, 2009, McIntosh and urology resident Aaron Smith, D.O. ("Smith")[2] performed a percutaneous nephrolithotripsy ("PCNL") on Bobbie Jean Wilson-White ("Wilson-

---

[1] The circuit court also granted summary disposition in favor of St. John Macomb Hospital ("SJMH"), Philip A. Adler, M.D. ("Adler"), and Diagnostic Radiology Consultants, P.C. ("DRC"). SJMH, Adler, and DRC are not parties on appeal.

[2] Smith was dismissed from this action by stipulation and is not a party on appeal.

-1-

White") to remove a kidney stone from her right kidney. Approximately four weeks prior to the surgery, Wilson-White had undergone a preoperative blood analysis pursuant to McIntosh's instructions. The analysis indicated a higher-than-normal prothrombin time ("PT") of 16.4, a higher-than-normal activated partial thromboplastin time ("APTT") of 40.1, and a low platelet count of 100. According to plaintiff, these were "clear indicators that [Wilson-White] had a clotting deficiency." It does not appear that McIntosh considered the results of Wilson-White's blood tests before proceeding with the PCNL operation.

Wilson-White began to hemorrhage during the surgery. The doctors were able to remove the kidney stone and Wilson-White was placed in a recovery area where she could be closely monitored. She then began to hemorrhage again, required numerous units of blood and blood products, and was taken back into the operating room twice during the course of the night, once to remove her right kidney. She died at 6:30 a.m. on the morning of April 29, 2009. Thereafter, plaintiff filed this medical-malpractice action alleging, among other things, that McIntosh had breached the standard of care by continuing with the PCNL despite the results of the preoperative blood analysis and without consulting a hematologist or obtaining clearance to operate.

Plaintiff's affidavit of merit was executed by Michael E. Lustgarten, M.D. ("Lustgarten"). During his deposition, Lustgarten opined that McIntosh should have reviewed Wilson-White's laboratory results and obtained a hematologic consultation before conducting the PCNL. Lustgarten testified that, in light of Wilson-White's blood-test results, he would not have performed the surgery without first consulting a hematologist. He opined that Wilson-White "was at high risk for a problem based on the blood work that was obtained." He noted that the procedure was purely elective for Wilson-White, opined that a patient with a platelet count of 100 was "not . . . a candidate for a PCNL electively," and testified that "an intelligent urologist would not have gone forward with this case." Lustgarten opined that McIntosh had never reviewed Wilson-White's preoperative laboratory results before conducting the surgery. If McIntosh had reviewed the laboratory results, and had still proceeded with the PCNL, this would not have conformed to "the standard of practice of most urologists" in Lustgarten's opinion. Under examination by defense counsel, Lustgarten admitted that he could not point to any textbook or other medical literature to support the proposition that a PCNL should not be performed on a patient with a PT of 16.4, an APTT of 40.1, and a platelet count of 100. In response to another of defense counsel's questions, Lustgarten stated, "I'm not sure what the standard of practices are." However, Lustgarten later confirmed that he was aware of the standard of care applicable to board-certified urologists performing PCNLs and opined that McIntosh had violated this standard.

After the deposition, defendants moved for summary disposition under MCR 2.116(C)(10), arguing that Lustgarten did not know the standard of care and, therefore, was not qualified under Michigan law to serve as an expert witness. The circuit court granted defendants' motion.

We review de novo the circuit court's decision on a motion for summary disposition under MCR 2.116(C)(10). *Kennedy v Great Atlantic & Pacific Tea Co*, 274 Mich App 710, 712; 737 NW2d 179 (2007). The pleadings, affidavits, depositions, admissions, and other admissible documentary evidence submitted by the parties must be considered in the light most favorable to

the nonmoving party. MCR 2.116(G)(5); *Kennedy*, 274 Mich App at 712. "Summary disposition is proper under MCR 2.116(C)(10) if the affidavits and other documentary evidence show that there is no genuine issue concerning any material fact and that the moving party is entitled to judgment as a matter of law." *Id*.

We review for an abuse of discretion the circuit court's ruling regarding the qualifications of an expert witness. *Gonzalez v St John Hosp & Med Ctr*, 275 Mich App 290, 294; 739 NW2d 392 (2007). An abuse of discretion occurs when the circuit court chooses an outcome that falls outside the range of principled and reasonable outcomes. *Maldonado v Ford Motor Co*, 476 Mich 372, 388; 719 NW2d 809 (2006).

We conclude that the circuit court abused its discretion by disqualifying Lustgarten as an expert witness on the applicable standard of care. The plaintiff in a medical malpractice case bears the burden of proving (1) the applicable standard of care, (2) breach of that standard by the defendant, (3) an injury, and (4) proximate causation of the injury by the alleged breach. *Wischmeyer v Schanz*, 449 Mich 469, 484; 536 NW2d 760 (1995). Expert testimony is required to establish the applicable standard of care and to demonstrate that the defendant breached that standard. *Birmingham v Vance*, 204 Mich App 418, 421; 516 NW2d 95 (1994).

The admissibility of expert testimony on the applicable standard of care in medical-malpractice actions is governed by several different provisions. MRE 702 generally provides for the testimony of experts:

> If the court determines that scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

MCL 600.2955, which is largely derived from the United States Supreme Court's decision in *Daubert v Merrell Dow Pharmaceuticals, Inc*, 509 US 579, 593-594; 113 S Ct 2786; 125 L Ed 2d 469 (1993), provides in pertinent part:

> (1) In an action for the death of a person or for injury to a person or property, a scientific opinion rendered by an otherwise qualified expert is not admissible unless the court determines that the opinion is reliable and will assist the trier of fact. In making that determination, the court shall examine the opinion and the basis for the opinion, which basis includes the facts, technique, methodology, and reasoning relied on by the expert, and shall consider all of the following factors:
>
> (a) Whether the opinion and its basis have been subjected to scientific testing and replication.
>
> (b) Whether the opinion and its basis have been subjected to peer review publication.

-3-

(c) The existence and maintenance of generally accepted standards governing the application and interpretation of a methodology or technique and whether the opinion and its basis are consistent with those standards.

(d) The known or potential error rate of the opinion and its basis.

(e) The degree to which the opinion and its basis are generally accepted within the relevant expert community. As used in this subdivision, "relevant expert community" means individuals who are knowledgeable in the field of study and are gainfully employed applying that knowledge on the free market.

(f) Whether the basis for the opinion is reliable and whether experts in that field would rely on the same basis to reach the type of opinion being proffered.

(g) Whether the opinion or methodology is relied upon by experts outside of the context of litigation.

* * *

(3) In an action alleging medical malpractice, the provisions of this section are in addition to, and do not otherwise affect, the criteria for expert testimony provided in section 2169.

In turn, MCL 600.2169 provides in relevant part:

(2) In determining the qualifications of an expert witness in an action alleging medical malpractice, the court shall, at a minimum, evaluate all of the following:

(a) The educational and professional training of the expert witness.

(b) The area of specialization of the expert witness.

(c) The length of time the expert witness has been engaged in the active clinical practice or instruction of the health profession or the specialty.

(d) The relevancy of the expert witness's testimony.

(3) This section does not limit the power of the trial court to disqualify an expert witness on grounds other than the qualifications set forth in this section.

Lustgarten emphasized that he, and any careful urologist, would have reviewed Wilson-White's laboratory results and consulted a hematologist before proceeding with the PCNL. We fully acknowledge that, when asked whether any urologist could ever perform a PCNL on a patient with Wilson-White's laboratory results and still comply with the standard of practice, Lustgarten responded that he was "not sure what the standard of practices are." But Lustgarten subsequently explained that "most urologists" would have reviewed Wilson-White's preoperative laboratory results and obtained a hematologic consultation, and that "an intelligent

-4-

urologist would not have gone forward with this case." It is apparent that despite his response to defense counsel's question, Lustgarten understood the standard of care applicable to board-certified urologists who perform PCNLs. Lustgarten's response to defense counsel's question did not disqualify him from providing expert testimony in this case.

We note that this was Lustgarten's first deposition. He explained that he had never been deposed and had never presented testimony in court. The fact that he gave a confusing response when asked about the standard of practice did not disqualify him from serving as an expert witness in this case. The remainder of his testimony clarified that he did, in fact, understand the standard of practice applicable to board-certified urologists.

Lustgarten could not point to any textbook or other medical literature to support his opinion that McIntosh breached the standard of care by failing to review Wilson-White's laboratory results, failing to consult a hematologist, and proceeding with the surgery. But this fact, alone, was not dispositive of Lustgarten's qualifications. Importantly, Lustgarten did not state that there was no literature that supported his position. Nor did defendants point to any medical literature that contradicted Lustgarten's opinions. Cf. *Edry v Adelman*, 486 Mich 634, 640; 786 NW2d 567 (2010). Rather, Lustgarten testified that he had not researched the literature in advance of his deposition and thus did not know whether there was any supporting literature or not.

Lustgarten testified concerning his experience and training as a board-certified urologist. He explained that he had performed PCNLs in the past, but no longer did so because of the extensive bleeding associated with the procedure. *Daubert*, MRE 702, and MCL 600.2169(2) expressly contemplate that an expert may be qualified on the basis of his experience and training. See *Kumho Tire Co, Ltd v Carmichael*, 526 US 137, 156; 119 S Ct 1167; 143 L Ed 2d 238 (1999). An expert is not required to identify supporting medical or scientific literature in order for his testimony to be admissible under *Daubert* or MRE 702. *People v Unger*, 278 Mich App 210, 220; 749 NW2d 272 (2008); see also *Dickenson v Cardiac & Thoracic Surgery of Eastern Tenn*, 388 F3d 976, 980 (CA 6, 2004); *Amorgianos v Nat'l R Passenger Corp*, 303 F3d 256, 266 (CA 2, 2002). The lack of peer-reviewed literature supporting an expert's opinion goes to the weight of the testimony, not its admissibility. See *Unger*, 278 Mich App at 220; see also *Amorgianos*, 303 F3d at 267. Lustgarten's failure to cite literary support for his opinions did not disqualify him from providing expert testimony on the standard of care.

Nor are we persuaded that Lustgarten's opinion concerning the standard of care was improper for the reason that he explained what he would have done differently if he had been in McIntosh's position. It is true that "[t]he measuring standard of care is founded upon how other doctors in that field of medicine would act and not how any particular doctor would act." *Carbonnell v Bluhm*, 114 Mich App 216, 224; 318 NW2d 659 (1982). Accordingly, an expert's use of the pronoun "I" or description of his own personal practices is inappropriate. *Id*. While Lustgarten did state what he would have done differently in this case, the majority of his deposition testimony related to the standard of practice applicable to board-certified urologists in general. Despite his occasional use of the pronoun "I," we conclude that Lustgarten was testifying as to the applicable standard of care, not merely his own personal practices. *Francisco v Manson, Jackson & Kane, Inc*, 145 Mich App 255, 260; 377 NW2d 313 (1985). Even if the objectionable portions of Lustgarten's testimony containing the pronoun "I" were stricken, the

-5-

remaining portions of his testimony would properly describe the standard of care applicable to board-certified urologists who perform PCNLs. *Id*.

As an alternate ground for affirmance, defendants argue that plaintiff failed to present sufficient expert testimony on the issue of proximate causation. We decline to address this argument, which was not decided by the circuit court. Defendants will be free to pursue this argument on remand.

In sum, the circuit court abused its discretion by striking Lustgarten as an expert witness. Lustgarten's deposition testimony was reliable, supported by training and experience, and sufficient to assist the trier of fact. Accordingly, Lustgarten was qualified to provide expert testimony on the standard of care in this case. We reverse the circuit court's grant of summary disposition in favor of defendants on this ground and remand for further proceedings. Given our conclusion in this regard, we need not consider the remaining arguments raised by plaintiff on appeal.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction. Plaintiff, having prevailed on appeal, may tax costs pursuant to MCR 7.219.

/s/ Mark J. Cavanagh
/s/ Kathleen Jansen
/s/ Amy Ronayne Krause